**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GEORGE OLIVERAS | } |
| Plaintiff | } |
| | } |
| v. | } CIVIL ACTION NO. 05-30045-MAP |
| | } |
| CITY OF SPRINGFIELD, SPRINGFIELD PUBLIC | } |
| SCHOOLS, SUPERINTENDENT DR. JOSEPH | } |
| P. BURKE, PRINCIPAL DR. ANN STENNETT, | } |
| ASSISTANT PRINCIPAL MR. THOMAS | } |
| O'BRIEN, ASSISTANT PRINCIPAL MR. | } |
| KOLAJO AFOLABI | } |
| Defendants | } |

**COMPLAINT**

**INTRODUCTION**

1.      This is an action for declaratory and injunctive relief, together with compensatory and

punitive damages, and attorney's fees and costs, to review and to enjoin decisions of the

Principal, and Assistant Principals of the High School of Commerce to suspend and expel

the Plaintiff, as members of the freshman class, and the failure of the Superintendent of

Schools to hear the matter on appeal.  Contrary to the requirements of the Fourteenth

Amendment of the United States Constitution and Articles I and X of the Massachusetts

Declaration of Rights, the Defendants denied the Plaintiffs procedural and substantive

due process in excluding them from school for alleged misconduct.

**JURISDICTION**

2.      Jurisdiction is premised on 28 U.S.C. § 1331; 28 U.S.C. § 1343 (a); 28 U.S.C. § 1367; 42

U.S.C. § 1983; and 5 U.S.C. § 704.

## **PARTIES**

3.   Plaintiff, George Oliveras, is a natural citizen of Massachusetts, residing at 54 Foster Street, Springfield, Hampden County, Massachusetts. (Hereinafter, "George ").

4.   Defendant, City of Springfield, Massachusetts, is the town or municipality through its public schools, which is charged by law with providing students similarly-situated to George with a free, public education, including high school (courses) of study.

5.   Defendant, Dr. Joseph P Burke, Superintendent of Schools, in his official and individual capacities, is charged with managing the Springfield Public Schools consistent with state law and the policy determinations of the School Committee.

6.    Defendant, Dr. Ann Stennett, Principal, in her official and individual capacities, is the educational administrator and manager of the High School of Commerce, and may, pursuant to state law, suspend and expel students for specifically enumerated misconduct.

7.   Defendant, Mr. Thomas O'Brien, Assistant Principal, Springfield High School, in his official and individual capacities, is a building administrator under the direct supervision of the Principal, who regularly makes decisions regarding the suspension of students.

8.   Defendant, Mr. Kolajo Afolabi, Assistant Principal, Springfield High School, in his official and individual capacities, is a building administrator under the direct supervision of the Principal, who regularly makes decisions regarding the suspension of students.

## **FACTUAL ALLEGATIONS**

9.   George Oliveras is fifteen years old and was enrolled as a freshman at the High School of Commerce in Springfield, Massachusetts.

10.    George  resides at 56 Foster Street in Springfield Massachusetts with his aunt Madelyn Santiago and his cousin George Oliveras, also fifteen years old.  Madelyn Santiago is the legal guardian of George Oliveras.

11.    On or about December 14, 2004 George Oliveras and his cousin Hector Rivera were arrested by the State Police and Springfield Police Department and charged with delinquency felony counts of arson, breaking and entering and destruction of private property.  Both boys were held at the Department of Youth Services facility in Westfield while awaiting arraignment and a bail hearing.

12.    On December 16, 2004, George  and Hector Rivera were brought to the Juvenile Court in Springfield for the arraignment and bail hearing.  The District Attorney did not ask for bail on that date and George and Hector were released to Madelyn Santiago's custody with several conditions imposed by the Court.

13.    Immediately upon obtaining physical custody of George and Hector, Ms. Santiago brought them to the High School of Commerce.

14.    Upon entering the building she was met by Assistant Principal, Mr. Thomas O'Brien. Ms. Santiago observed Mr. O'Brien say to Hector "what are you doing here."  Ms. Kowalski, the mediation teacher also stated to Hector  "what are you doing here."  Ms. Santiago replied to them that she had brought George and Hector back to school.

15.    Ms. Santiago went directly to the main office and requested to speak with the Principal, Dr. Ann Stennett.  The secretary at the main office, Maria, stated to Ms. Santiago that Dr. Stennett was busy and could not see them at that time, but that they could wait.  Ms. Santiago waited more than one hour in the main office before being brought into Dr. Stennett's Office.

3

16.  At approximately 11 A.M. Ms. Santiago, George Oliveras and Hector Rivera met with Dr Stennett and Mr. O'Brien in the Dr. Stennett's office.  Ms. Santiago informed Dr. Stennett that she had brought to boys to the school and that the Juvenile Court had imposed a condition on them that they attend school daily.  Dr. Stennett said that she had already heard about the arrests, although she did not specify how or by whom.  Dr. Stennett informed Ms. Santiago that she had to wait for Dr. Burke, the Superintendent to call to see about the process.

17.  Ms. Santiago, George and Hector waited in Dr. Stennett's office while she placed a call to the Superintendent's Office.  While Dr. Stennett was waiting on the phone to speak with Dr. Burke, Mr. O'Brien spoke up and said to George and Hector that there is a law in the school that if they are charged with a felony they would not be allowed back in to Commerce High School.  He then stated to Ms. Santiago that the School District was going to suspend the boys and place them at one of the alternative schools.

18.  Dr Stennett then removed the phone away from her mouth and said to Ms. Santiago, George and Hector that one of the regulations of the school is to suspend the George and Hector for thirty (30) days plus, until this matter is over in court.  Dr. Stennett then placed the phone back over her mouth and spoke with Dr. Burke on the phone for a brief time, then hung up.

19.  Dr. Stennett said that Dr. Burke said to her that until this matter is over, or until the School District can find out whether they are charged with a felony or misdemeanor, that the Springfield Public School are suspending the boys.  She then said that in the meanwhile the School District will decide if we want them back in this school or if they would be placing them in other alternative schools.  Dr. Stennett then stated that in the

4

event that they are charged with a felony, that they are not allowed to come back to Commerce or any of the Springfield Schools. She then stated that in the event that they are charged with misdemeanors, they would be allowed to come back to Commerce High School.

20. Mr. O'Brien then stated to Ms. Santiago, "I do not understand how your kids got involved in this, but these are the regulations in school that we have to follow." Dr. Stennett then informed Ms. Santiago that she did not want the kids back in school because she did not know whether they were dangerous to the other kids or the premises.

21. Dr. Stennett then stated that she and the Superintendent did not want either George or Hector on any school premises.

22. Dr. Stennett stated that she was aware that George and Hector were going to be back before the Juvenile Court for a dangerousness hearing on December 17, 2004. She stated that if they were found by the court to be dangerous then they would not be allowed in any Springfield Public School. She then stated to Ms. Santiago to come back to her after the Dangerousness Hearing and let her know what happened. She then concluded the meeting by stating to Ms. Santiago, that they would gather all the boy's homework assignments and send them home later that day with Ms. Santiago's other child who also attends Commerce High School.

23. The meeting was concluded at approximately 1:25 A.M.

24. On December 17, 2004 Ms. Santiago, George Oliveras and Hector Rivera went to the Juvenile Court in Springfield and met with each of the boy's probation officers, Jerry Sabilia and Bob Martin, respectively.

5

25.  Ms. Santiago was provided by the probation officers with a copy of the conditions of release, the District Attorney's Office, Probation, the Judge, the attorneys for George and Hector, Ms. Santiago had agreed to in exchange for being released into the community while waiting for the disposition. Please find attached hereto the Conditions of Release from the Juvenile Court attached hereto and incorporated by reference as "Exhibit A."

26.  Probation explained to Ms. Santiago that the conditions of release were that the boys maintain zero curfew. The probation officer's specified that that meant that they had to attend school daily, and after school they had to remain in the home located at 56 Foster Street, Springfield Massachusetts. The probation officers stated to Ms. Santiago that if George or Hector went anywhere it had to be supervised by her. Last, the probation officers informed Ms. Santiago that there was not going be a dangerousness hearing because all parties were in agreement that the boys did not present a danger to the community.

27.  At approximately 12:30 in the afternoon on December 17, 2004, Ms. Santiago brought the conditions of release, plus the lawyers cards to Commerce High School to give them to Dr. Stennett. The lawyers for George and Hector , Stephanie Raymond Esq. and Thomas Bridges Esq., respectively, had provided their cards to Ms. Santiago so that if Dr. Stennett had any questions she could call them.

28.  Upon entering the main office at Commerce High School, Ms. Santiago was told by Maria, that Dr. Stennett did not have time to see her. Ms. Santiago observed Maria make photo copies of all the documents, including the lawyer's cards, and she watched her put the copies in Dr. Stennett's mail box in the main office. The secretary also wrote down a

message from Ms. Santiago asking her to contact her later that day regarding this matter. Ms. Santiago left two phone numbers for her to reach her at.

29.    At approximately 5:30 that evening, Friday December 17th 2004, Dr. Stennett left a message on the message machine at Ms. Santiago's home saying that they have an appointment at Commerce High School, Monday morning at 9 A.M. on December 20th 2004.

30.    On December 20th 2004 Ms. Santiago along with George and Hector went to the meeting at Commerce High School.  Present for the school was Dr. Ann Stennett, the Principal of Commerce High School, Mr. Thomas O'Brien, Assistant Principal for the class of 2006, and Mr. Kolajo Afolabi, Assistant Principal for the class of 2008.

31.    Dr Stennett started the meeting by asking George and Hector if they were involved in pulling fire alarms in the school a couple of weeks prior to their removal from school. Hector immediately said "hell no." George also stated "no." Dr. Stennett and Mr. O'Brien both asked if either George or Hector were special education students.  The boys each stated they were not.

32.    Mr. O'Brien then began to address the issues pertaining to the suspension.  He also instructed Mr. Afolabi to take notes regarding the meeting.  Mr. O'Brien had documents in his hand that he was referring to while he spoke. He stated that he had papers that were the school regulations.  Mr. O'Brien informed Ms. Santiago, that if George and Hector were found guilty of a felony that they, pursuant to M.G.L. Chapter 71 §37H ½, would not be allowed back to Commerce High School.  He then stated that if they are guilty of misdemeanor they can come back to Commerce High School.  He stated that in the meantime they would give them their school work from their classes to complete at home.

He then stated that neither George nor Hector was allowed on the premises of any Springfield Public School property. He stated that if they were found on school property they would be arrested and charged with trespassing. Next he said that Mr. Afolabi and the other principals and the Quebec team would be notified of their decision and that they would be on the lookout for them on the school premises.

33. Then Mr. Afolabi said that if he sees the kids he will contact Dr. Stennett and take appropriate action against them.

34. Dr Stennett then spoke up at that point and asked again if they would write a written statement about the charges against them. Again both boys refused specifically informing Dr. Stennett that their lawyers had advised them not to write down anything relating to the charges against them. Dr. Stennett and Mr. O'Brien then both tried to convince them to write out statements. Mr. O'Brien said that even if they don't want to write a statement "that's okay because we know everything about it from a kid that was talking about it in the hallway."

35. Neither Ms. Santiago, nor George or Hector, were ever provided with the name of this "kid from the hallway" or what that boy from the hallway had said. Mr. O'Brien continued to talk periodically referring to the documents in his hand, saying that the papers he had told them everything.

36. Mr. O'Brien then stated that he had names. He then specifically mentioning the following names of other students like: Carlos Escalera, Ruben Parez, Andres Gonzales, Charlie Garcia and Jose Mezonnette. After he finished stating the names he said to the boys "are you sure you don't want to make a statement?" Again, they responded "no."

37.    Dr Stennett concluded the meeting stating that the School District was aware that the boys had an upcoming court date on January 7th, 2005 whereby the matter could be brought to a disposition. She said that depending on that disposition maybe they would let the boys back into school. She stated that she would wait for Dr. Burke to call and tell them what to do at that point. Dr. Stennett then abruptly said that they had a meeting with other parents so they had to conclude the meeting.

38.    Ms. Santiago, George Oliveras, or Hector Rivera got up and walked out without ever having been provided with any documents or being able to see the papers Mr. O'Brien had in his hand.

39.    Since that date, Ms. Santiago, George Oliveras, or Hector Rivera have never received any papers from the School District explaining the Principal's finding for a suspension or the length of the suspension.

40.    On December 22nd 2004, Ms. Santiago was at the High School of Commerce to get forms verified by the school for "Workfare Program" that both boys participated in. While in the main office Ms. Santiago inquired about the boy's homework that was promised. Ms. Santiago waited a long time while the secretaries in the main office to called their teachers. After a while one secretary handed Ms. Santiago one assignment for George from his Italian class and one assignment for Hector from his Physical Education class. The secretary stated to Ms. Santiago that after Christmas Vacation they would send home all the homework and any missing assignments with her other son who also attends the High School of Commerce.

41.    Between January 3rd, 2005 and February 7th 2005, Ms. Santiago made approximately six or seven phone calls to Dr. Stennett's Office to see what the status of the homework

assignments were. Every time the secretaries put Ms. Santiago through to Dr. Stennett's voice mail.

42. Ms. Santiago's messages have never been retuned. As of February 7th 2005, no home work or missing assignments have been provided for either boy.

43. On January 7th 2005, Derek M. Beaulieu, Esq., was appointed by the Juvenile Court as Guardian Ad Litem for purposes of advocating for George Oliveras and Hector Rivera with regards to their being suspended from the Springfield Public Schools. Please find attached hereto as "Exhibit B" a copy of the appointment for George Oliveras.

44. On January 10th, 2005 Attorney Beaulieu wrote a letter of representation to Dr. Thomas Burke, Superintendent of the Springfield Public Schools requesting information both oral and written regarding the decision of the building principal, the nature and length of the suspension, and to be provided with any relevant documentation. Please find attached hereto as "Exhibit C" a copy of the Letter of Representation dated January 10, 2005.

45. The letter of January 10th 2005, also states the following:

> "I am also requesting a Superintendent's Level Appeal. At this appeal I will be submitting documentation that the felony charges pending against my client have been resolved without a finding guilt, or admission of delinquency. Upon submission of that documentation I expect that pursuant to Chapter 71 §37H ½ subsection (1) paragraph 2, the suspension will be overturned. If the submission of this documentation prior to the Superintendent's Level Appeal will help to expedite the process or potentially alter the position of the Springfield Public School, please let me know."

46. On or about Thursday, January 20, 2005, Attorney Beaulieu was contacted by telephone on behalf of the Springfield Public Schools by Attorney Peter Fenton.

47.  Attorney Fenton indicted that he had been asked by the Springfield Public Schools to handle the matter pertaining to George Oliveras and Hector Rivera. It was his understanding that neither child was special education students and that this was a matter exclusively governed by M.G.L Chapter 71 §37H ½.

48.  Attorney Beaulieu stated to Attorney Fenton that both matters had already been resolved without a finding of guilt. He was made aware that pursuant to section 37H ½ the school district had to prove not only that the student in question had been charged with a felony, but that he must be found guilty of the felony to be permanently excluded.

49.  Attorney Beaulieu stated it was his belief that there were many procedural inadequacies in the School District's handling of the initial short term suspension, namely the lack of any written documentation about the nature of the allegations against them or the specific nature charges, names of any accusers, and lastly what their rights pursuant to the suspension/expulsion process had been violated.

50.  Attorney Fenton indicated that the School District suspected the boys of pulling fire alarms in the past and that the administration at Commerce High School really did not want them in or at Commerce High School. He stated that they wanted to put them at MCDI, the Springfield Public School's alternative school.

51.  On behalf of Hector Rivera and George Oliveras, Attorney Beaulieu stated that they wanted to be placed back at Commerce High School and that they had a right to be in the mainstream.

52.  There was then a brief discussion with respect to whether any tutorial services had been provided. Attorney Fenton indicated that he would gather information regarding whether the tutorial had been in place and ascertain the position of his client with respect to

11

whether they would reinstate the students. He concluded stating that he would respond the following day.

53. On Tuesday January 25, 2005, Attorney Fenton contacted Attorney Beaulieu by telephone and stated that his clients, the Springfield Public Schools wanted to place both George Oliveras and Hector Rivera at MCDI.

54. He stated that he had spoken with Assistant District Attorney, Brett Vottero at the District Attorney's Office and confirmed that the Plaintiff and his cousin had received dispositions pursuant to M.G.L. Ch. 276 §87 and as such they were not found guilty of felony charges. Assistant District Attorney, Vottero also informed him that the arson charges had been *nolle pros.*

55. Attorney Beaulieu responded to Attorney Fenton that pursuant to the law M.G.L. Ch. 71 §37H ½ that because neither boy had been found guilty of a felony, nor were they found dangerous or disruptive to the school or community, that they had to be reinstated immediately.

56. Attorney Beaulieu stated that if the Springfield Public Schools wanted to perform behavioral and or psych-educational testing once they were reinstated, because it believed the boys belonged in an alternative placement, then it was entitled to do that, but that was an entirely different process and an entirely separate matter. With respect to the instant matter they had to be reinstated.

57. In this phone conversation, Attorney Beaulieu specifically requested again to Attorney Peter Fenton that if the School District did not reinstate them at once, they wanted their Superintendent's Level Appeal as initially requested on January 10th 2005.

12

58.  On January 26, 28, 31, and February 2, 2005, Attorney Beaulieu left messages with Attorney Fenton's Office to please return his phone calls.

59.  As of February 7th 2005 neither the School District nor its attorney has responded.

60.  Since December 16th 2004, George Oliveras has not been permitted to attend any school, he has not been provided with missing assignments as promised, and he has not been provided with any form of a tutorial.

## COUNT I

## CONDUCT BY DEFENDANTS AS ARBITRARY AND CAPRICIOUS

9.   The Plaintiffs hereby realleges and incorporate by reference each and every preceding paragraph with the same force and effect as if set forth herein.

10.  The decision of the Defendants to expel the Plaintiff, carrying out its policy is contrary to law and is arbitrary and capricious in its application.

11.  As a direct and proximate result of the conduct of the Defendants, George was denied the opportunity to continue to attend school and complete his High School requirements and have suffered severe harm, injury and damages.

## COUNT II

## SUBSTANTIVE DUE PROCESS

12.  The Plaintiffs hereby realleges and incorporate by reference each and every preceding paragraph with the same force and effect as if set forth herein.

13.  The actions of the Defendants in expelling George were arbitrary and capricious and lacked any substantial basis.

14.  Pursuant to the Fourteenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights, Articles I and X, George is protected against

governmental action that is arbitrary and capricious and in violation of the guarantee of substantive due process.

15.    As a direct and proximate result of the Defendants' actions, George was deprived of the opportunity to complete his courses of study at the High School of Commerce, and has suffered severe harm, injury and damages.

## COUNT III

## EQUAL PROTECTION

16.    The Plaintiffs hereby realleges and incorporate by reference each and every preceding paragraph with the same force and effect as if set forth herein.

17.    Pursuant to the Massachusetts Constitution and Laws, George has a right to a free public education, which is a fundamental right under the State Constitution.

18.    Defendants have adopted and implemented a disciplinary policy that infringes on George's fundamental right to an education without the necessary justification for such infringement and without any compelling state interest.

19.    Defendants, by adopting and implementing a disciplinary policy which is not rationally related to the goals they seek to achieve and to public policy, have interfered with George's fundamental right to an education, in violation of the guarantee of equal protection under State and Federal Constitutions.

20.    Defendants, acting under color of state law, have deprived George of his rights under the equal protection clause of the United States Constitution and 42 U.S.C. § 1983.

21.    Defendants knowingly and intentionally violated George's constitutional rights by implementing a policy that they knew was arbitrary, capricious and irrational.

14

22.    As a direct and proximate result of the Defendants' actions, George has suffered severe harm, injury and damage in violation of their civil rights.

## COUNT IV

## PROCEDURAL DUE PROCESS

23.    The Plaintiff hereby realleges and incorporates by reference each and every preceding paragraph with the same force and effect as if set forth herein.

24.    The Defendants exclusion of George from school for alleged misconduct was undertaken without adequate notices and fair hearings in violation of Due Process Clause of the United States Constitution and 42 U.S.C. § 1983 and the Massachusetts Constitution.

25.    Defendants knowingly and intentionally, even after having been afforded a litany of procedural violations, violated George's constitutional rights by suspending and expelling them and depriving them of liberty and property interests without due process of law.

26.    As a direct and proximate result of the violations of due process by the Defendants, George has suffered harm, injury and damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, George Oliveras prays that the Court enter Judgment as follows:

A.    Enter Judgment for the Plaintiff, George Oliveras on each Count of Complaint in an amount sufficient to compensate them for all of their past, present and future injuries, together with interest and the costs of this action;

B.    Award the Plaintiffs, George Oliveras punitive damages for harm and injuries suffered by them as a result of the violations of their civil rights, said damages to be awarded pursuant to 42 U.S.C. § 1983;

C.    Enter Declaratory Judgment for the Plaintiffs, George on each Count of the Complaint, declaring that their exclusion from school was and is contrary to law, arbitrary and capricious, and in violation of their due process rights;

D.    Enter Permanent Injunctions requiring that the Defendants to provide all missing assignments, grade said assignments fairly, facilitate George's advancement to the tenth grade, expunge his record of this suspension/expulsion and cease and desist from disseminating any information to third parties concerning the Defendants' actions or the alleged misconduct of the Plaintiffs;

E.    Award the Plaintiff, George reasonable attorney's fees and costs pursuant to 42 U.S.C. §1983; and

F.    Grant such further relief as the Court deems just and proper.


                                        Respectfully submitted,
                                        The Plaintiff
                                        By his attorney

February 8, 2005

                                        Derek M. Beaulieu, Esq.
                                        1242 Main Street, Suite 306
                                        Springfield, MA 01103
                                        BBO#644185

**EXHIBIT A**

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

JUVENILE COURT DEPARTMENT
HAMPDEN COUNTY DIVISION
DOCKET NO(S): *DL045 3375, 6*

COMMONWEALTH OF MASSACHUSETTS

V.

DOB: *9-14-89*

*GEORGE L. OLIVERAS* ADDRESS: *56 FOSTER ST (2ND)*
*S&F(), MA 01105*

## MASSACHUSETTS GENERAL LAWS CHAPTER 276, SECTION 87 AGREEMENT

I agree to comply with the conditions outlined below. I understand that these conditions, when signed by all parties, will become an order of this court.

I understand that this case will be dismissed upon successful completion of these conditions within the specified time period, and that failure to comply can result in further actions against me by this court.

The term of probation from: *1-21-05*   to: *1-22-07 w/ SUPERVISION*

## THE STANDARD CONDITIONS OF PROBATION   (Strike out conditions not imposed)

1. Obey all court orders and all local, state, and federal laws.
2. You shall notify your probation officer immediately of any change of residence or employment.
3. You shall report to a probation officer at such time and place as he/she requires.
4. You must not leave the Commonwealth of Massachusetts without the express consent of the Probation Officer. Such permission may be conditioned upon your agreement to waive extradition.

And in addition:
- *ATTEND SCHOOL DAILY.*
- *LETTER OF APOLOGY TO MOSQUE.*
- *160 Community Service.*
- *ABIDE BY CONCENTRATION AGREEMENT.*

So Ordered _____
Justice

X _____    _____
Juvenile                           Parent or Legal Guardian

_____    _____
Attorney for Juvenile (if applicable)    Assistant District Attorney

Date: *1-21-05*    _____
Probation Officer

**Any payments ordered are payable to Donald P. Whitney, Clerk-Magistrate
Hampden County Juvenile Court 80 State Street, Springfield, MA 01103
(Money Order, Bank Check, Certified Personal Check)**

# TRIAL COURT OF THE COMMONWEALTH
## Juvenile Court Department - Hampden County Division

## COURT ORDERS/CHAPTER 276, SECTION 87 (IN LIEU OF BAIL) FORM

Name of Juvenile: _George L. Oliveras_

Docket Number(s): _DL04S3374_

[X]    You have been ordered to comply with the following conditions pending your return to court on _1/7/05_. Failure to comply with these orders could lead to further court action such as a warrant for your arrest and placement on bail.

[ ]    You have been ordered to comply with the following conditions pending your return to court on _____. These conditions are imposed pursuant to Chapter 276, Section 87 and are in lieu of you being placed on bail. Failure to comply with these orders could lead to further court action such as a warrant for your arrest and placement on bail.

### COURT ORDERS/CONDITIONS

1. _Release on Posted Bail, Obey_
2. _Zero Curfew Daily, Except_
3. _When at School or With Parent._
4. _____
5. _____
6. _____
7. _____

SO ORDERED: _Rebekah Crampton Hamulaka_
Justice                                    Date _12/17/04_

I have read and understand the above court orders/conditions.

X _George Oliveras_                    X _Madelyn Santiago_
Juvenile                                Parent

_Geo Silba_
Probation Officer                      Date _12/17/04_

Any payments ordered are payable to Donald P. Whitney, Clerk-Magistrate
Hampden County Juvenile Court   80 State Street, Springfield, MA 01103
(Money Order, Bank Check, Certified Personal Check)

Form 1

**EXHIBIT B**

# COMMONWEALTH OF MASSACHUSETTS

Trial Court of the Commonwealth
Juvenile Court Department

Hampden County Juvenile Court
Springfield Division

No. **DL 04S3374**

IN RE:

APPOINTMENT FOR GUARDIAN AD LITEM

I, **Judith A. Locke,** Associate Justice of the Hampden County Juvenile Court, hereby appoint, **Derek Beaulieu, Esq.,** Springfield, Hampden County, Massachusetts, as **Guardian ad Litem/Next Friend** on behalf of, **George Oliveras,** date of birth, **September 14, 1989.** Said child being the child of **Jose Oliveras and Milza Rodriguez.**

The above named guardian ad litem is authorized to bill the Trial Court no more than 10 hours per fiscal year  pursuant to this appointment . If additional services are required it is the responsibility of the guardian ad litem to seek approval of additional time prior to the provision of such services.

**Judith A. Locke**
**Associate Justice**

Date: **January 7, 2005**



**EXHIBIT C**

# DEREK M. BEAULIEU, ESQ.

ATTORNEY AT LAW
1212 MAIN STREET, SUITE 306
THE HISTORIC WALKER BUILDING
SPRINGFIELD, MASSACHUSETTS 01103

—

TELEPHONE (413) 733-1824
FACSIMILE (413) 567-7746

Dr. Joseph P. Burke
Superintendent
Springfield Public School
195 State Street
Springfield, MA 01103

January 10, 2005

RE:    George Oliveras (dob 9-14-89)

Dear Dr. Burke:

Please note that I was appointed on January 7, 2005, by Judge Locke of the Hampden County Juvenile Court, to be the Guardian Ad Litem for George Oliveras. Please find attached hereto a copy of my appointment in order to facilitate future contact regarding privileged information.

Please note that George Oliveras was recently suspended from Commerce High School. It is my understanding that my client's legal guardian, Ms. Madelyn Santiago was informed by the High School of Commerce's building principal, Dr. Ann J. Stennett, and assistant principal, Mr. Thomas O'Brien, that George was being suspended pursuant to a recent felony charge. It is also my understanding that George and his legal guarding were allowed to meet with the Dr. Stennett to discuss the charges. I am therefore assuming that the suspension was pursuant to M.G.L. Chapter 71 §37H ½ and that the meeting between Dr. Stennett, my client and his mother was his due process right to respond.

After meeting with my client and his parent it is unclear to me what the time period for the suspension was determined to be. As you are also aware, the building principal is afforded the right pursuant to M.G.L. Chapter 71 §37H ½ to suspend a student for a reasonable period of time when felony charges are pending. However, M.G.L. Chapter 71 §37H ½, requires the building principal to specify what the appropriate time period is and state the reasons for the suspension. The time period and reasons must be written and provided to my client. I am therefore, requesting copies be provided to my office with respect to all documents sent to my client pertaining to this suspension.

It is also unclear to me whether this student has any special education rights that were impacted by the decision to suspend him. Therefore, I am also requesting that I be provided with the students entire educational file, which may contain testing for special education and any special education file that may be in existence.

On behalf of my client, I am also requesting a Superintendent's Level Appeal. At this appeal I will be submitting documentation that the felony charges pending against my client have been resolved without a finding guilt, or admission of delinquency. Upon submission of that documentation I expect that pursuant to Chapter 71 §37H ½ subsection (1) paragraph 2, the suspension will be overturned. If the submission of this documentation prior to the Superintendent's Level Appeal will help to expedite the process or potentially alter the position of the Springfield Public School, please let me know.

Please do not hesitate to contact my office with any questions or concerns.

Thank you for your attention to this matter.

Very truly yours,

Derek M. Beaulieu, Esq.

CC:
Regina Tate
Sandra Hill

# COMMONWEALTH OF MASSACHUSETTS

Trial Court of the Commonwealth
Juvenile Court Department

Hampden County Juvenile Court
Springfield Division

No.  **DL 04S3374**

IN RE:

APPOINTMENT FOR GUARDIAN AD LITEM

I, **Judith A. Locke,** Associate Justice of the Hampden County Juvenile Court, hereby appoint, **Derek Beaulieu, Esq.,** Springfield, Hampden County, Massachusetts, as **Guardian ad Litem/Next Friend** on behalf of, **George Oliveras,** date of birth, **September 14, 1989.** Said child being the child of **Jose Oliveras and Milza Rodriguez.**

The above named guardian ad litem is authorized to bill the Trial Court no more than 10 hours per fiscal year  pursuant to this appointment . If additional services are required it is the responsibility of the guardian ad litem to seek approval of additional time prior to the provision of such services.

**Judith A. Locke**
**Associate Justice**

**Date: January 7, 2005**



**EXHIBIT D**

## SYSTEMIC DISCIPLINE CODE—Responsibilities

A. Responsibilities of the Home

For success with school discipline, parent(s)/guardian(s) are expected to:
- Keep informed about your child's behavior and achievement at school
- Instill respect for all school staff and children
- Support school rules
- Consult the school principal/counselor/teacher when issues arise
- Work with school personnel to implement appropriate consequences and/or interventions
- Ensure that children attend school regularly and arrive on time each day
- Communicate with school personnel about the child

B. Responsibilities of the School Staff

Establishment of an orderly, educational environment requires that all staff model and expect appropriate behavior. Teachers/counselors/principals are expected to:
- Explain expectations and consequences to students
- Listen to and respect student/parent/guardian views on classroom issues
- Establish an environment encouraging mutual respect of individuals
- Be consistent regarding disrespectful, inappropriate behavior
- De-escalate inappropriate behavior through management strategies
- Follow-up on inappropriate behavior with logical consequences
- Reach out to parent/guardian regularly to foster positive communications
- Teach students to solve problems in a nonviolent, positive manner

## Programs To Support Academic Success

### SERVICE TEAMS

Service Teams are part of a comprehensive plan to ensure that all students receive appropriate educational and support resources that will lead to academic achievement. The problem-solving Service Teams provide a forum for analysis by the students' teachers and service providers. Issues that a Team cannot resolve are referred to the School Management Team (led by the principal and including Service Team facilitators) and the district Policy Committee (led by the Superintendent and/or designee and including principals and top management from service agencies). The goal is to review all student data, analyze issues affecting academic performance, link the student to appropriate school or district resources, and, where appropriate, link the student to social services and mental health services.

### ACADEMIC INTERVENTION PROGRAM

Each secondary school has an in-house assignment program, an academic intervention and support program which functions to provide continued services to students who for a short period of time require intervention in a self-contained classroom. This program is staffed to allow for assignment of both regular and special education students. Students whose behavior requires specialized instruction will be placed in this room for between one period and ten full school days. Special education students will continue to receive all services, including academic instruction, as dictated by the IEP's, and will have continued access to school programs. Regular education students will continue to receive academic instruction.

### ACADEMIC INTERVENTION PROGRAM—In-House Suspension Program
This program, which is in most secondary schools, is for short-term suspensions, usually up to five days.

### ACADEMIC INTERVENTION PROGRAM—District Assignment Program
The Emergency Services Program/Assessment Center (ESP/AC) provides services for students whose offenses result in long-term suspensions, as well as programs in substance abuse, conflict resolution, and academic support for

students who cannot be served at the school site. The goal of the ESP/AC program is to prepare the student for reentry into the school system.

## CRISIS INTERVENTION TEAMS
To comply with state physical restraint regulations, each school has developed a Crisis Intervention Team. The teams have had training in de-escalation strategies and in physical restraint. Each school has established procedures to assist colleagues in maintaining a safe educational environment.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT AGREEMENT
It is the responsibility of all school staff to report any life-threatening situations or statements expressed by students, either written or verbal, to the principal. It is the responsibility of the principal to report this information to the Student Support Police Team (Quebec Team) and School Department authorities. The school system provides training for the police and school staff to help identify indicators of potential danger. Identified students are assigned immediately to the ESP/AC program for: Review of all information relative to the incident(s), Violence prevention program, Assessments, Counseling, and Referral services (i.e., outside counseling, psychiatric evaluations). A decision regarding appropriate academic placement and needs of the student will be made by ESP/AC staff based on the results of assessments and evaluations in consultation with the student's parent(s)/guardian(s), and involved school system employees. For some incidents, the student may be arrested and taken to the Budd Juvenile Assessment Center at 450 Cottage Street (787-6360). A decision will be made regarding participation in the Diversion Program or court arraignment.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT—Guidelines For Specific Offenses
Each disciplinary case is unique and will be adjudicated according to the facts accompanying it. Efforts will be made to discipline students while maintaining them in regular school programs. Parent(s) and guardian(s) are encouraged to be involved in the disciplinary process. Intent of the act, age of the child, frequency of the offense, and student history will help determine which options are most suitable to bring about changed behavior. The principal maintains discretion in the implementation of penalties. Due process will be followed for all serious disciplinary actions. In exceptional circumstances, a student may be transferred to another school. Students may be transferred to a program that leads to high school diploma or Graduate Equivalency Diploma (GED); parents, guardians, and students must be made aware of the limitations of the G.E.D.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT—Grounds for Disciplinary Action
This section describes the offenses for which a student, in accordance with applicable law and other sections of this Code may be disciplined.

A. Possession of a dangerous weapon, possession of a controlled substance, assault and battery on a school staff member and for behavior that results in a felony charge. Massachusetts law under the Educational Reform Act of 1993, as amended, gives principals the authority to suspend or expel a student for particular offenses. This authority is, however, limited by federal special education law. The particular offenses for which a principal may suspend or expel, except where prohibited by applicable law include Possession of a dangerous weapon, Possession of a controlled substance, Assault and battery on a school staff member, and for behavior that results in a felony charge. Although the Springfield School Committee recognizes that M.G.L. Chapter 71, Section 37H and 37H1/2 confers certain discretionary authority on a principal for certain serious offenses—possession of a dangerous weapon, possession of a controlled substance, assault and battery on a school staff member; and behavior that results in a felony charge—the Springfield School Committee encourages principals to consider imposing no less than a 30-day suspension for those offenses, except where otherwise required by law.

- Possession of a dangerous weapon, possession of a controlled substance, assault and battery on a school staff member. M.G.L. Chapter 71, Section 37H indicates specific offenses relating to weapons, drugs and assault of a staff member that gives principals authority to suspend or expel. The statute provides in relevant part:

- Any student found on school premises or at school-sponsored or school-related events, including athletic games, in possession of a dangerous weapon, including, but not limited to, a gun or a knife, or a controlled substance as defined in chapter ninety-four C, including, but not limited to marijuana, cocaine, and heroin, may be subject to expulsion from the school or school district by the principal.

B. Any student who assaults a principal, assistant principal, teacher, paraprofessional, or other educational staff on school premises or at school-sponsored or school-related events, including athletic games, may be subject to expulsion from the school or school district by the principal.

- Any student who is charged with a violation of either paragraph (A) or (B), above, shall be notified in writing of an opportunity for a hearing; provided, however, that the student may have representation, along with the opportunity to present evidence and witnesses at said hearing before the principal. After said hearing, a principal may, in his or her discretion, decide to suspend rather than expel a student who has been determined by the principal to have violated either paragraph (A) or (B). Any student who has been expelled from a school district pursuant to these provisions shall have the right to appeal to the Superintendent. The expelled student shall have ten days from the date of the expulsion in which to notify the Superintendent of his or her appeal. The student has the right to counsel at a hearing before the Superintendent. The subject matter of the appeal shall not be limited solely to a factual determination of whether the student has violated any provisions of this section. When a student is expelled under the provisions of this section, no school or school district within the commonwealth shall be required to admit such student or to provide educational services to said student. If said student does apply for admission to another school or school district, the superintendent of the school district to which the application is made may request and shall receive from the Superintendent of the school expelling said student a written statement of the reasons for said expulsion. [M. G. L. ch. 71, 37H (a)-(e)]

In addition to the preceding, a police report will be filed for assault and battery offenses on school staff. A student en route to or from a school-related function who commits an assault and battery on a bus driver, including a PVTA driver, will be suspended and sent to the Assessment Center, and may lose the privilege of bus transportation for the remainder of the year.

- Behavior that results in a felony charge: Principals have the authority to suspend or expel for behavior, including off campus behavior, which results in a felony charge. (M.G.L. Chapter 71, Section 37H 1/2) Except where prohibited by applicable law, in these cases, the principal may suspend if the student is charged, and expel if convicted, after the principal holds a hearing and determines the student will be a detriment to the school.

- Egregious acts of violence, use or sale of illegal drugs and alcohol on school property, and arson. The number of days for long-term suspensions is determined by the incident, the pattern of behavior that allows a judgment regarding the danger of the student to self and others, and the ability of the student to respond to a specific program. Students who are found to present a clear and present danger to self and others will, except where prohibited by applicable law, receive services through the ESP/AC program for up to 45 calendar days and may be subject to expulsion; students who present a potential danger will receive shorter suspensions either at the school or at the ESP/AC. For offenses requiring long term external suspension, a determination will be made regarding the student's risk for inappropriate/illegal behavior prior to reentry to the school. Except where prohibited by law, a student may be subject to long term suspension under this section for the following school related disciplinary offenses:

- Egregious acts of violence (i.e., assault and battery) of students. In cases of egregious acts of violence with intent to harm a student, in addition to long-term suspension, the student is subject to expulsion.

- Use or sale of illegal drugs, including alcohol, on school property. If a student is in possession of a controlled substance, he/she is subject to long-term suspension and to expulsion. In cases involving alcohol/drug usage or possession in school, and when the student is suspended to the ESP, as a condition of reentry the student should be evaluated by a therapist at a substance abuse treatment agency and receive treatment services as needed.
- Arson or attempted arson. A student involved in arson or attempted arson is subject to a variety of consequences up to and including expulsion.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT—Additional Grounds for Discipline

The School Committee voted the following policy:

1. Gang-related activities including but not limited to recruitment and/or wearing of gang-related colors is prohibited on school grounds or at activities sponsored by schools, and constitute grounds for suspension or expulsion.

2. All electronic devices, which include but are not limited to beepers, portable telephones, electronic games, walkmans and earphones, are prohibited from school grounds. Bringing such devices to school may, depending on the circumstances, constitute sufficient grounds for confiscation, detention, parental conference, or, for repeated offenses, suspension. For special events (i.e., field trips), the principal may suspend this rule. The school system is not responsible for loss of confiscated items.

3. Conduct that is indecent, lewd, insulting, or demeaning is prohibited on school grounds, as is the use of obscene and/or profane language and gestures. Violation of this rule may constitute grounds for suspension.

4. Individuals—adults or minors—who trespass on school property can expect to be arrested. This includes youth who are enrolled in other schools but are not students in the school where they are trespassing.

5. Students are to identify themselves to any school personnel (teacher, administrator, police/security person) upon request. Failure to do so is grounds for suspension.

If interpretation of the above rules is necessary, the determination of the principal, using reasonable person standards, shall govern the interpretation. Other offenses that may lead to disciplinary action include:

- Under the influence of alcohol, but not in possession (principal or designee determines if student is "under the influence")
- Defiance of authority (insubordination)
- Offensive or disruptive behavior
- Bus misconduct
- Classroom disruption
- Vandalism, breaking and entering, theft, disruptive or violent behavior
- Profanity, obscene language, possession of obscene material
- Fighting (mutual combative situation) tardiness (for school or class)
- Truancy (from class and from school)
- Smoking
- Possession of laser pointer
- Violation of Civil Rights—Students have the right to be free from discrimination based on race, national origin, religion, gender, sexual orientation or disability, sexual harassment, hazing. The nature and complexity of the offense determine the options to be used by the principal and the designee of the Superintendent, in consultation with the City Law Department or the District Attorney's Office. A violation of any state or federal law could lead to suspension or expulsion.
- Any disruptive action(s) of a student(s) in a particular situation may constitute grounds for suspension or expulsion. The circumstances of each case will be assessed by the appropriate administrator, using the reasonable person standard.

**EXHIBIT E**

- Leniency Request Form indicating the reasons for denying leniency and supporting a long-term suspension or expulsion
- Documentation of the due process hearing at the school
- Manifestation determination where required
- Documentation of IEP Team meeting where required
- Functional Behavioral Assessment where needed

The following are the options for consequences that will be implemented by the central office administrator as a result of the Incident Review Process:

1. Long-term suspension to the Assessment Center for up to 45 calendar days
   - with reentry to the sending school following the suspension
   - with transfer to another school at the end of the suspension
2. Expulsion
3. Transfer to alternative school
4. A report to the police and/or DSS when warranted.

## GUN-FREE SCHOOL ACT

Any student who is determined to have brought a firearm to school or to a school-related function shall be excluded from the Springfield Public Schools for a period of not less than one year, except as determined by the Superintendent on a case-by-case basis. The definition of "firearm" for purposes of this section includes, but is not limited to, guns (including a starter gun), bombs, grenades, rockets, missiles, mines, and similar devices.

## PROCEDURAL STEPS/DUE PROCESS for SUSPENSION

In all suspensions, principals will follow due process. For long-term suspensions, the due process procedures require the principal to submit a documented checklist with signatures of the principal and involved personnel and with recommendation for leniency, if appropriate, in the Appeals process. The major offenses for long-term suspensions listed above must have a police report. (This does not necessarily mean that charges will or must be pressed.)

All appeal hearings involving staff assault and staff assault and battery or using weapons in a life-threatening situation will, after the initial hearing at the school, be held at the Central Office with the designee(s) of the Superintendent who will review all such staff assaults. The teacher involved will be invited to the appeal hearing. Regarding staff assaults and battery, teachers should be encouraged to bring charges, understanding if there is "reasonable cause" (i.e., severe circumstances) that they will have the full support of the School Committee, School Administration, Police Department and the Law Department. If threatened by possible retaliation, a teacher should notify the police. Also, teachers should understand that, should court appearances be necessary, reporting of assaults will not result in adverse evaluations or loss of pay.

## PROCEDURAL "DUE PROCESS"

Due Process, as detailed below will be afforded to all students subject to discipline and shall include the following procedures. (With respect to children with special needs, cumulative suspensions cannot generally exceed ten school days in any school year without following the procedures set forth in the "DISCIPLINE-RELATED INFORMATION FOR STUDENTS WITH SPECIAL NEEDS" section of this Code):

- Hearing notification of charges and due process procedures; a presentation of the evidence against the student will be stated by the Hearing Officer (principal or designee) at the school. [After reasonable attempts to contact, if the pupil/parent(s)/guardian(s) do not appear at the hearing without good cause,

this will constitute a waiver of the hearing and the case shall be reviewed by the Hearing Officer. A decision will be rendered on the evidence available.]

- Opportunity to respond to charges in front of an impartial adult; a presentation by the student and parent(s)/guardian(s) or designee (individual) of any defense or mitigating circumstances. A student eighteen (18) years of age or older may, upon request in writing, exclude his/her parent(s)/guardian(s) from the hearing.
- Opportunity to present witnesses if necessary; submission of the written statements from any person in defense of the student will be accepted by the Hearing Officer (principal or designee).
- Notification of all evidence; the Hearing Officer (principal or designee) shall record a summary of the facts and disputed evidence. The Hearing Officer shall have the discretion to take whatever action is necessary to clarify facts, but the student should be informed of all actions.
- Right to know the outcome; on the same date as the hearing, a decision with the reasons will be given to the student and parent or guardian. The decision may authorize return to school at an earlier date, and may include an alternative educational plan or evaluation request under special education law.
- Right to appeal; if the parent/guardian or pupil disputes the decision of the Hearing Officer, the student or parent/guardian may, within 20 days of the date of the decision, request a review of the decision by the Superintendent's designee. This request must be in writing and specify the grounds for which the review is requested. The Superintendent's designee will review the decision of the Hearing Officer directly with the principal and parent/guardian prior to notifying them of any decision, and will notify the parents/guardians of the results of the review within three school days of receipt of the request. The Superintendent's designee may not increase the terms of the suspension, but may reduce or modify them in any manner if the child is still on suspension at the time of the review. Failure to follow procedures may result in the suspension being revoked based on technicalities.

## LAWS REGARDING DRUGS, ALCOHOL, FIREARMS GANG-RELATED ACTIVITIES

In addition to school disciplinary measures regarding drugs, alcohol and gang-related activities, the following state laws are currently in effect:

- Use of Fake I.D. to Purchase Alcohol—6 months to 1 year loss of license. Use of a fake I.D. to purchase alcohol or providing false information to obtain a liquor I.D. or duplicate license from the Registry of Motor Vehicles will result in the loss of driver's license for 6 months to a year. Also, fines and a jail sentence may be imposed by the courts.
- Any Drug Conviction, Including Possession—up to 5 years loss of license. Conviction for a drug offense, including possession of even a small amount of an illegal drug, will result in the loss of driver's license for up to 5 years in addition to court ordered penalties. If younger than 18, the issuance of driver's license may be delayed until age 21.
- Dealing Drugs Near Schools—Mandatory 2-year jail sentence. A conviction for selling drugs within 1000 feet of school property in Massachusetts will result in a minimum mandatory two-year jail sentence plus a fine of up to $10,000.
- Carrying a Firearm—Whoever, not being a law enforcement officer, and notwithstanding any license obtained by him under the provisions of Chapter 140, carries on his person a firearm as hereinafter defined, loaded, or other dangerous weapon in any building or on the grounds of any elementary or secondary school ... without the written authorization of the board or officer in charge of such elementary or secondary school ... shall be punished by a fine of not more than $1,000.00 or by imprisonment for not more than one year, or both. "Firearm" shall mean any pistol, revolver, rifle, or smoothbore arm from which a shot, bullet, or pellet can be discharged by whatever means. Any officer in charge of an elementary or secondary school ... or any faculty member or administrative officer ... failing to report violations of this paragraph shall be guilty of a misdemeanor and punished by a fine of not more than $500.00.

---

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as requred by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

George Oliwas

## DEFENDANTS

Springfield Public Schools Et al

**(b)** County of Residence of First Listed Plaintiff  Hampden
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Hampden
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Derek M. Brasllien
1242 Main St, Suite 306
Spfld MA 01103    733-1824

Attorneys (If Known)

Peter Fenton Esq
1695 Main Street
Springfield MA 01103  736-9529

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties
       in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405 (g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | or Defendant) | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☒ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | State Statutes |
| | | ☐ 550 Civil Rights | | | ☒ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
     Proceeding
☐ 2 Removed from
     State Court
☐ 3 Remanded from
     Appellate Court
☐ 4 Reinstated or
     Reopened
☐ 5 Transferred from
     another district
     (specify)
☐ 6 Multidistrict
     Litigation
☐ 7 Appeal to
     District Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

14th Amd US Constitution Violation of Procedural and Substantive due Process of law stemming from expulsion pursuant to M.G.L. 71 § 37 H½

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
Preliminary injunctive relief

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE  2-8-05

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _George Olivias v. Springfield_
   _Public Schools_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ✓   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   ___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   _____None_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                          YES ☐        NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
                                          YES ☐        NO ☑

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                          YES ☐        NO ☑

                                          YES ☐        NO ☑

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                          YES ☐        NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                          YES ☑        NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☐        Central Division ☐        Western Division ☑

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☐        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
                                          YES ☐        NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  _Derek M. Beaullieu_____
ADDRESS  _1242 Main St, Suite 306, Springfield MA 01103_
TELEPHONE NO.  _(413) 733-1824_____

Coversheetlocal.wpd - 10/17/02