# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| George Oliveras<br><br>               Plaintiff<br><br>v.<br><br>CITY OF SPRINGFIELD, SPRINGFIELD PUBLIC<br>SCHOOLS, SUPERINTENDENT DR. JOSEPH<br>P. BURKE, PRINCIPAL DR. ANN STENNETT,<br>ASSISTANT PRINCIPAL MR. THOMAS<br>O'BRIEN, ASSISTANT PRINCIPAL MR.<br>KOLAJO AFOLABI<br>               Defendants | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}  CIVIL ACTION NO.  *MAP*<br>*05 - 30045 - MAP* |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Plaintiff, by and through his undersigned counsel, respectfully files this Memorandum in Support of his Motion for Temporary Restraining Order and Preliminary Injunction.

## INTRODUCTION

The Fourteenth Amendment forbids a state from depriving any person of life, liberty or property without due process of law.[1]  Massachusetts law prescribes that each town containing five hundred families or households, which includes Springfield, shall maintain a high school which shall contain one or more courses of study, at least four years in length, "for the benefits of all the inhabitants of the town." M.G.L. c 71, § 1 and 4.  The Plaintiff was a student attending the High School of Commerce in Springfield Massachusetts, and had a legitimate claim of entitlement to a public education.  That public education is perhaps "the most important function

---

[1] Article 1 and X of the Massachusetts Declaration of Rights also protects individuals, as a matter of right, in their enjoyment of life, liberty and property.  The Due Process Clauses of the Massachusetts and United States Constitution are subject to the same analysis. School Committee of Hatfield v. Board of Education, 372 Mass. 513, 363 N.E. 2d 237 (1977).

back to school. Ms. Santiago went directly to the main office and requested to speak with the Principal, Dr. Ann Stennett. The secretary at the main office, Maria, stated to Ms. Santiago that Dr. Stennett was busy and could not see them at that time, but that they could wait. Ms. Santiago waited more than one hour in the main office before being brought into Dr. Stennett's Office.

At approximately 11 A.M. Ms. Santiago, George Oliveras and Hector Rivera met with Dr Stennett and Mr. O'Brien in the Dr. Stennett's office. Ms. Santiago informed Dr. Stennett that she had brought to boys to the school and that the Juvenile Court had imposed a condition on them that they attend school daily. Dr. Stennett said that she had already heard about the arrests, although she did not specify how or by whom. Dr. Stennett informed Ms. Santiago that she had to wait for Dr. Burke, the Superintendent to call to see about the process.

Ms. Santiago, Hector and George waited in Dr. Stennett's office while she placed a call to the Superintendent's Office. While Dr. Stennett was waiting on the phone to speak with Dr. Burke, Mr. O'Brien spoke up and said to Hector and George that there is a law in the school that if they are charged with a felony they would not be allowed back in to Commerce High School. He then stated to Ms. Santiago that the School District was going to suspend the boys and place them at one of the alternative schools.

Dr Stennett then removed the phone away from her mouth and said to Ms. Santiago, Hector and George that one of the regulations of the school is to suspend the Hector and George for thirty (30) days plus, until this matter is over in court. Dr. Stennett then placed the phone back over her mouth and spoke with Dr. Burke on the phone for a brief time, then hung up. Dr. Stennett said that Dr. Burke said to her that until this matter is over, or until the School District can find out whether they are charged with a felony or misdemeanor, that the Springfield Public School are suspending the boys. She then said that in the meanwhile the School District will

4

decide if we want them back in this school or if they would be placing them in other alternative schools. Dr. Stennett then stated that in the event that they are charged with a felony, that they are not allowed to come back to Commerce or any of the Springfield Schools. She then stated that in the event that they are charged with misdemeanors, they would be allowed to come back to Commerce High School.

Mr. O'Brien then stated to Ms. Santiago, "I do not understand how your kids got involved in this, but these are the regulations in school that we have to follow."    Dr. Stennett then informed Ms. Santiago that she did not want the kids back in school because she did not know whether they were dangerous to the other kids or the premises. Dr. Stennett then stated that she and the Superintendent did not want either Hector or George on any school premises.  Dr. Stennett stated that she was aware that Hector and George were going to be back before the Juvenile Court for a dangerousness hearing on December 17, 2004. She stated that if they were found by the court to be dangerous then they would not be allowed in any Springfield Public School. She then stated to Ms. Santiago to come back to her after the Dangerousness Hearing and let her know what happened. She then concluded the meeting by stating to Ms. Santiago, that they would gather all the boy's homework assignments and send them home later that day with Ms. Santiago's other child who also attends Commerce High School. The meeting was concluded at approximately 1:25 A.M.

On December 17, 2004 Ms. Santiago, George Oliveras and Hector Rivera went to the Juvenile Court in Springfield and met with each of the boy's probation officers, Jerry Sabilia and Bob Martin, respectively. Ms. Santiago was provided by the probation officers with a copy of the conditions of release, the District Attorney's Office, Probation, the Judge, the attorneys for Hector and George, Ms. Santiago had agreed to in exchange for being released into the

community while waiting for the disposition. Please find attached hereto the Conditions of Release from the Juvenile Court attached hereto and incorporated by reference as "Exhibit A." Probation explained to Ms. Santiago that the conditions of release were that the boys maintain zero curfew. The probation officer's specified that that meant that they had to attend school daily, and after school they had to remain in the home located at 56 Foster Street, Springfield Massachusetts. The probation officers stated to Ms. Santiago that if Hector or George went anywhere it had to be supervised by her. Last, the probation officers informed Ms. Santiago that there was not going be a dangerousness hearing because all parties were in agreement that the boys did not present a danger to the community.

At approximately 12:30 in the afternoon on December 17, 2004, Ms. Santiago brought the conditions of release, plus the lawyers cards to Commerce High School to give them to Dr. Stennett. The lawyers for George and Hector, Stephanie Raymond Esq. and Thomas Bridges Esq., respectively, had provided their cards to Ms. Santiago so that if Dr. Stennett had any questions she could call them. Upon entering the main office at Commerce High School, Ms. Santiago was told by Maria, that Dr. Stennett did not have time to see her. Ms. Santiago observed Maria make photo copies of all the documents, including the lawyer's cards, and she watched her put the copies in Dr. Stennett's mail box in the main office. The secretary also wrote down a message from Ms. Santiago asking her to contact her later that day regarding this matter. Ms. Santiago left two phone numbers for her to reach her at.

At 5:30 that evening, Friday December 17th 2004, Dr. Stennett left a message on the message machine at Ms. Santiago's home saying that they have an appointment at Commerce High School, Monday morning at 9 A.M. on December 20th 2004.

On December 20th 2004 Ms. Santiago along with Hector and George went to the meeting at Commerce High School. Present for the school was Dr. Ann Stennett, the Principal of Commerce High School, Mr. Thomas O'Brien, Assistant Principal for the class of 2006, and Mr. Kolajo Afolabi, Assistant Principal for the class of 2008. Dr Stennett started the meeting by asking Hector and George if they were involved in pulling fire alarms in the school a couple of weeks prior to their removal from school. Hector immediately said "hell no." George also stated "no." Dr. Stennett and Mr. O'Brien both asked if either Hector or George were special education students. The boys each stated they were not. Mr. O'Brien then began to address the issues pertaining to the suspension. He also instructed Mr. Afolabi to take notes regarding the meeting. Mr. O'Brien had documents in his hand that he was referring to while he spoke. He stated that he had papers that were the school regulations. Mr. O'Brien informed Ms. Santiago, that if Hector and George were found guilty of a felony that they, pursuant to M.G.L. Chapter 71 §37H ½, would not be allowed back to Commerce High School. He then stated that if they are guilty of misdemeanor they can come back to Commerce High School. He stated that in the meantime they would give them their school work from their classes to complete at home. He then stated that neither Hector or George were allowed on the premises of any Springfield Public School property. He stated that if they were found on school property they would be arrested and charged with trespassing. Next he said that Mr. Afolabi and the other principals and the Quebec team would be notified of their decision and that they would be on the lookout for them on the school premises. Then Mr. Afolabi said that if he sees the kids he will contact Dr. Stennett and take appropriate action against them. Dr Stennett then spoke up at that point and asked again if they would write a written statement about the charges against them. Again both boys refused specifically informing Dr. Stennett that their lawyers had advised them not to write down

anything relating to the charges against them. Dr. Stennett and Mr. O'Brien then both tried to convince them to write out statements. Mr. O'Brien said that even if they don't want to write a statement "that's okay because we know everything about it from a kid that was talking about it in the hallway." Neither Ms. Santiago, nor Hector or George, were ever provided with the name of this "kid from the hallway" or what that boy from the hallway had said. Mr. O'Brien continued to talk periodically referring to the documents in his hand, saying that the papers he had told them everything. He also stated that he had names. He then specifically mentioning the following names of other students like: Carlos Escalera, Ruben Parez, Andres Gonzales, Charlie Garcia and Jose Mezonnette. After he finished stating the names he said to the boys "are you sure you don't want to make a statement?" Again, they responded "no."

Dr Stennett concluded the meeting stating that the School District was aware that the boys had an upcoming court date on January 7th, 2005 whereby the matter could be brought to a disposition. She said that depending on that disposition maybe they would let the boys back into school. She stated that she would wait for Dr. Burke to call and tell them what to do at that point. Dr. Stennett then abruptly said that they had a meeting with other parents so they had to conclude the meeting. Ms. Santiago, George Oliveras, or George Oliveras got up and walked out without ever having been provided with any documents or being able to see the papers Mr. O'Brien had in his hand. Since that date, Ms. Santiago, George Oliveras, or George Oliveras have never received any papers from the School District explaining the Principal's finding for a suspension or the length of the suspension.

On December 22nd 2004, Ms. Santiago was at the High School of Commerce to get forms verified by the school for "Workfare Program" that both boys participated in. While in the main office Ms. Santiago inquired about the boy's homework that was promised. Ms. Santiago waited

8

a long time while the secretaries in the main office to called their teachers. After a while one secretary handed Ms. Santiago one assignment for George from his Italian class and one assignment for Hector from his Physical Education class. The secretary stated to Ms. Santiago that after Christmas Vacation they would send home all the homework and any missing assignments with her other son who also attends the High School of Commerce.

Between January 3rd, 2005 and February 7th 2005, Ms. Santiago made approximately six or seven phone calls to Dr. Stennett's Office to see what the status of the homework assignments were. Every time the secretaries put Ms. Santiago through to Dr. Stennett's voice mail. Ms. Santiago's messages have never been retuned. As of February 7th 2005, no home work or missing assignments have been provided for either boy.

On January 7th 2005, Derek M. Beaulieu, Esq., was appointed by the Juvenile Court as Guardian Ad Litem for purposes of advocating for George Oliveras and Hector Rivera with regards to their being suspended from the Springfield Public Schools. Please find attached hereto as "Exhibit B" a copy of the appointment for George Oliveras.

On January 10th, 2005 Attorney Beaulieu wrote a letter of representation to Dr. Thomas Burke, Superintendent of the Springfield Public Schools requesting information both oral and written regarding the decision of the building principal, the nature and length of the suspension, and to be provided with any relevant documentation. Please find attached hereto as "Exhibit C" a copy of the Letter of Representation dated January 10, 2005. The letter of January 10th 2005, also states the following:

> "I am also requesting a Superintendent's Level Appeal. At this appeal I will be submitting documentation that the felony charges pending against my client have been resolved without a finding guilt, or admission of delinquency. Upon submission of that documentation I expect that pursuant to Chapter 71 §37H ½ subsection (1) paragraph 2, the suspension will be

9

overturned. If the submission of this documentation prior to the Superintendent's Level Appeal will help to expedite the process or potentially alter the position of the Springfield Public School, please let me know."

On or about Thursday, January 20, 2005, Attorney Beaulieu was contacted by telephone on behalf of the Springfield Public Schools by Attorney Peter Fenton. Attorney Fenton indicted that he had been asked by the Springfield Public Schools to handle the matter pertaining to George Oliveras and Hector Rivera. It was his understanding that neither child was special education students and that this was a matter exclusively governed by M.G.L Chapter 71 §37H ½. Attorney Beaulieu stated to Attorney Fenton that both matters had already been resolved without a finding of guilt. He was made aware that pursuant to section 37H ½ the school district had to prove not only that the student in question had been charged with a felony, but that he must be found guilty of the felony to be permanently excluded. Attorney Beaulieu stated it was his belief that there were many procedural inadequacies in the School District's handling of the initial short term suspension, namely the lack of any written documentation about the nature of the allegations against them or the specific nature charges, names of any accusers, and lastly what their rights pursuant to the suspension/expulsion process had been violated. Attorney Fenton indicated that the School District suspected the boys of pulling fire alarms in the past and that the administration at Commerce High School really did not want them in or at Commerce High School. He stated that they wanted to put them at MCDI, the Springfield Public School's alternative school. On behalf of George Oliveras, Attorney Beaulieu stated that he wanted to be placed back at Commerce High School and that they had a right to be in the mainstream. There was then a brief discussion with respect to whether any tutorial services had been provided. Attorney Fenton indicated that he would gather information regarding whether the tutorial had

10

been in place and ascertain the position of his client with respect to whether they would reinstate the students. He concluded stating that he would respond the following day.

On Tuesday January 25, 2005, Attorney Fenton contacted Attorney Beaulieu by telephone and stated that his clients, the Springfield Public Schools wanted to place both George Oliveras and Hector Rivera at MCDI. He stated that he had spoken with Assistant District Attorney, Brett Vottero at the District Attorney's Office and confirmed that the Plaintiff and his cousin had received dispositions pursuant to M.G.L. Ch. 276 §87 and as such they were not found guilty of felony charges. Assistant District Attorney, Vottero also informed him that the arson charges had been *nolle prosed*. Attorney Beaulieu responded to Attorney Fenton that pursuant to the law M.G.L. Ch. 71 §37H ½ that because neither boy had been found guilty of a felony, nor were they found dangerous or disruptive to the school or community, that they had to be reinstated immediately. Attorney Beaulieu stated that if the Springfield Public Schools wanted to perform behavioral and or psych-educational testing once they were reinstated, because it believed the boys belonged in an alternative placement, then it was entitled to do that, but that was an entirely different process and an entirely separate matter. With respect to the instant matter they had to be reinstated. In this phone conversation, Attorney Beaulieu specifically requested again to Attorney Peter Fenton that if the School District did not reinstate them at once, they wanted their Superintendent's Level Appeal as initially requested on January 10th 2005.

On January 26, 28, 31, and February 2, 2005, Attorney Beaulieu left messages with Attorney Fenton's Office to please return his phone calls. As of February 7th 2005 neither the School District or its attorney have responded.

Since December 16th 2004, George Oliveras has not been permitted to attend any school, he has not been provided with missing assignments as promised, and he has not been provided with any form of a tutorial.

## ARGUMENT

### I. THE DEFENDANTS ACTIONS IN EXCLUDING THE PLAINTIFF FROM SCHOOL WERE ARBITRARY AND CAPRICIOUS, LACKED ANY SUBSTANTIAL BASIS, AND WERE IN VIOLATION OF THE GUARANTY OF SUBSTANTIVE DUE PROCESS.

Pursuant to the Fourteenth Amendment and the Massachusetts Declaration of Rights, Articles I and X, the Plaintiff is protected against action by the Defendants that is arbitrary and capricious and in violation of the guaranty of substantive due process.

The Defendants, acting under the color of state law, knowingly and intentionally violated Plaintiff's constitutional rights. The Defendants carried out a policy of suspending students for up to 45 days based on felony charges alone in contradiction of the M.G.L Chapter 71 §37H ½ and its subsequent interpretation by the Massachusetts Supreme Judicial Court.

Massachusetts General Laws C 71, § 37H ½ states in pertinent part that:

> "...upon the issuance of a felony delinquency complaint against a student, the principal or headmaster of the building in which the students is enrolled in **may** (emphasis added) suspend such student for a period of time determined appropriate by said principal or headmaster is said principal determines the students continued presence in school would have a substantial detrimental effect on the general welfare of the school."

The Massachusetts Supreme Judicial Court in Doe v Superintendent of Schools of Stoughton, 437 Mass. 1, 767 N.E.2d 1054 (Mass. 2002) held "We agree with the Superior Court judge's interpretation of G. L. c. 71, §37H ½ : more than a felony charge is required to impose

12

suspension." <u>Doe v Superintendent</u> at 4. The Superior Court below had specifically stated with respect to M. G. L. c. 71, §37H ½ that, "a felony charge alone is not sufficient basis for imposing suspension; the statute also requires a determination that 'the student's continued presence in school would have a substantial detrimental effect on the general welfare of the school.'" <u>Id</u>. at 3.

Despite the clarity of the statute and subsequent interpretation of it by the Massachusetts Supreme Judicial Court, the Defendants put in place a policy pertaining to suspensions made pursuant to §37H ½ which is wholly inconsistent with the statute and the Supreme Judicial Court's interpretation. The Springfield Public Schools handbook provides in part:

> "Behavior that results in a felony charge: Principals have the authority to suspend or expel for behavior, including off campus behavior, which results in felony charge. In these cases, the principal may suspend if the student is charged, and expel if convicted, after the principal holds a hearing and determines the student will be a detriment to the school." Please find the provision stated above from the Springfield Public Schools Handbook, page 14, attached hereto as "Exhibit D."

This provision is very unclear. It reads literally that the Principal may suspend the student if the student is charged with a felony. The way the provision is drafted makes it appear that the Principal, only in cases of expulsion, has to have a hearing and determine whether the student will be a detriment to the general welfare to the school. The Defendant's actions were consistent with this interpretation of this reading of the handbook. The Principal and Assistant Principal repeatedly stated on December 16th and 20th that the boys would be suspended until the matter was resolved. Never, once was the issue of whether the George would constitute a detriment to the school welfare was discussed. Dr Stennett, the building Principal and the one person charged with the authority to suspend the students, concurred with Mr. O'Brien understanding of the law, stating to the parent that she had unfettered authority to suspend Hector for thirty (30) days plus

13

based on the felony charges alone. Even after Dr. Stennett's phone conversation with Dr. Burke, moments after she made the statement in the preceding sentence, she maintained that Hector and George were suspended until the matter was over or until the School District could find out whether they were charged with a felony or misdemeanor.   Not only did Dr. Stennett misstate her authority to suspend the boys based on the felony charges alone, but she was not even sure if they were charged with felony charges. According to her rational and her understanding of the law, she was not even sure about the sole basis of her decision to suspend the boys.  Clearly, from her actions and statements on December 16th 2004 she never intended to provide the Plaintiff with a hearing prior to the suspension.  The Principal's actions and implementation of the school's policy are in contradiction to the case law and the statute itself.

The Defendants also acted arbitrarily and capriciously by imposing severe punishment upon the Plaintiff based upon secret and extraneous evidence.   The statute is also clear with respect to the principal's obligation to provide the student with written notice and written reason. Massachusetts General Laws Ch. 71, § 37H ½ states in pertinent part that:

> "The student shall receive written notification of the charges and the reasons for such suspension prior to such suspension taking effect.  The student shall also receive written notification of his right to appeal and the process for appealing such suspension."

The students were suspended two times by the building Principal, Dr. Stennett, both times without ever being provided before the hearing written notice of the charges and the reasons for the proposed suspension.  Similarly, after the building Principal suspended the students, she never followed up on it with written notification of the appeals process or written documentation of her finding and the terms and length of the suspension.

14

Given that the Principal's decision to suspend was in contradiction with the law it "lacks any rational explanation that reasonable persons might support." <u>Fire Chief of E. Bridgewater v. Plymouth County Retirement Bd.</u>, 47 Mass. App. Ct. 66, 69 (1999), quoting <u>Cambridge v. Civil Serv. Comm'n</u>, 43 Mass. App. Ct. 300, 303 (1997). Her decisions were arbitrary and capricious, in clear violation of the law, and as such reasonable minds could not differ on the outcome. <u>Kinchla v. Board of Appeals of Falmouth</u>, 11 Mass. App. Ct. 927, 927 (1981).

The Defendants, without a rational basis, knowingly and intentionally carried out its policy which it knew was inconsistent with state law and failed to follow both statutory and its own due process mandates. The Plaintiff has suffered direct and proximate harm, injury and damage as a result of the violation of his substantive due process rights by the Defendants. The Defendants should be enjoined from implementing a policy that was arbitrary, capricious and irrational.

## II  THE DEFENDANTS FAILED TO ADHERE TO DUE PROCESS REQUIREMENTS IN CONNECTION WITH THE INITIAL SUSPENSION OF THE PLIANTIFF ON DECEMBER 16, 2004.

A short-term suspension is a far milder deprivation of a student's entitlement to an education than a long-term or permanent exclusion from school. But the Due Process Clause of the Constitution requires, even in connection with a suspension of ten (10) days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the school authorities have and an opportunity to present his side of the story. <u>Goss v. Lopez</u>, 419 U.S. 565, 95 S.Ct. 729 (1975).

The Massachusetts Supreme Judicial Court in <u>Doe v Superintendent of Schools of Stoughton</u>, 437 Mass. 1, 767 N.E.2d 1054 (Mass. 2002) authorizes the suspension of students

15

who have been charged with felonies pursuant to M. G. L. c. 71, §37H ½. However, the Massachusetts Supreme Judicial Court made clear that the statute specifies that the principal or headmaster who makes the initial decision to suspend, must provide the student with prior written notification, including reasoning for a suspension, and a hearing must take place before any suspension may take effect. Id.

In the present case, on December 16, 2004, the day after the Plaintiff was released from being held by the Juvenile Court, his aunt brought him to school where they were met at the door by the assistant principal Mr. O'Brien who stated to Hector "what are you doing here." Only an hour or so later Mr. O'Brien stated to Ms. Santiago in the presence of Dr. Stennett, that the School District was going to suspend Hector and George and place them at one of the alternative schools. It is clear from the statement of Mr. O'Brien that the decision to suspend Hector and his cousin George Oliveras had already been summarily made prior this meeting or the phone call to Dr. Burke's.

At the end of the meeting On December 16, 2004, Dr. Stennett simply stated that the Plaintiff was suspended. This was done in contradiction the Springfield Public Schools own policy as stated in its Handbook[2] which requires:

> "In all suspensions, principals will follow due process. For long-term suspensions, the due process procedures require the principal to submit a documented checklist with signatures of the principal and involved personnel and with recommendation for leniency, if appropriate, in the Appeals process. The major offenses for long-term suspensions listed above must have a police report." Please find the provision stated above from the Springfield Public Schools Handbook, page 14, attached hereto as "Exhibit D."

---

[2] Although admittedly this is not the 2004-2005 Handbook, The Springfield Public School's Handbook from the 2003-2004 is listed on the official web page as its current policy.

The Handbook is clear that arson falls into the category of major offense that can result in long-term suspensions. *See* "Exhibit D" page 15. The due process policy as stated in the Springfield Public School's Handbook clearly states:

"Due Process, as detailed below will be afforded to all students subject to discipline and shall include the following procedures.

- Hearing notification of charges and due process procedures; a presentation of the evidence against the student will be stated by the Hearing Officer (principal or designee) at the school.
- Opportunity to respond to charges in front of an impartial adult; a presentation by the student and parent(s)/guardian(s) or designee (individual) of any defense or mitigating circumstances.
- Opportunity to present witnesses if necessary; submission of the written statements from any person in defense of the student will be accepted by the Hearing Officer (principal or designee).
- Notification of all evidence; the Hearing Officer (principal or designee) shall record a summary of the facts and disputed evidence. The Hearing Officer shall have the discretion to take whatever action is necessary to clarify facts, but the student should be informed of all actions.
- Right to know the outcome; on the same date as the hearing, a decision with the reasons will be given to the student and parent or guardian. The decision may authorize return to school at an earlier date, and may include an alternative educational plan or evaluation request under special education law.
- Right to appeal; if the parent/guardian or pupil disputes the decision of the Hearing Officer, the student or parent/guardian may, within 20 days of the date of the decision, request a review of the decision by the Superintendent's designee. This request must be in writing and specify the grounds for which the review is requested. The Superintendent's designee will review the decision of the Hearing Officer directly with the principal and parent/guardian prior to notifying them of any decision, and will notify the parents/guardians of the results of the review within three school days of receipt of the request. The Superintendent's designee may not increase the terms of the suspension, but may reduce or modify them in any manner if the child is still on suspension at the time of the review. Failure to follow procedures may result in the suspension being revoked based on technicalities." Please find the provision stated above from the Springfield Public Schools Handbook, pages 17-18, attached hereto as "Exhibit E."

In the present case the suspension was implemented prior to any notice or presentation of evidence. At no time prior to Dr. Stennett's decision to impose this suspension did anyone from

the School District provide George or his legal guardian with the specific allegations against him so as to give him an opportunity to explain his version of the facts. Neither the Plaintiff nor his parent were told what the basis of the accusations were against him. Moreover, he was summarily removed from school without any notice or hearing.

The process necessary to ensure "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school" was not followed. Goss v. Lopez, 419 U.S. 565, at 581, 95 S.Ct. 729 at 740 (1975). Therefore, the first suspension imposed upon the Plaintiff on December 16, 2005, by the Defendants which occurred without a hearing, as required under Goss, was invalid, unconstitutional, and should be enjoined.

## III THE SECOND SUSPENSION WHICH OCCURRED ON DECEMBER 20TH 2004 WAS CONDUCTED CONTRARY TO THE REQUIREMENTS OF PROCEDURAL DUE PROCESS; AS SUCH, IT WAS INVALID AND SHOULD BE ENJOINED.

The United States Supreme Court in Goss made itself clear that it solely addressed the procedural requirements of short term suspensions from school, not exceeding ten (10) days. However, in that case the Supreme Court stated "Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." Goss v. Lopez, 419 U.S. 565, 585, 95 S.Ct. 729, 741 (1975).

Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment. The United States Supreme Court has consistently held that some form of hearing is required before an individual is deprived of a constitutionally protected interest. Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct 893 (1976). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and

18

hardships of a criminal conviction, is a principle basic to our society." Id. at 902. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Id.

According to the Court in Matthews, as the demands of due process are flexible depending on the particular situation, the specific dictates of due process requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement(s) would entail. Id. at 903.

The degree of deprivation to the Plaintiff created by the Defendant Principal's decision to suspend and or upholding of her decision to impose the suspension of the Plaintiff is clearly substantial and must be considered in assessing the validity of the administrative decision making process here.   Clearly, the Plaintiff's ability to complete his high school education, graduate with his class, and potentially pursue college level studies was severely impacted by the actions of the Defendants. The risk of erroneous deprivation of such substantial interests through the procedures used, or lack thereof, is exceedingly high.

The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and the opportunity to meet it." Id. at 909.  The notice by the Principal that a "meeting" was scheduled for December 20, 2004, was received by the Plaintiff's guardian on her answering machine after 5:30 PM on Friday afternoon. The proposed meeting was for 9 AM Monday morning.   There was less than one operable business hour between the time the Principal left the massage and the time of the meeting.  The timing of the

19

notice, relative to the time of the meeting, left no time for the guardian to contact her child's attorney or arrange to have counsel present at the meeting with her.   Essentially, the parent/aunt was precluded from obtaining legal advice or representation prior to the meeting.

Also, the message left by the Principal itself was at best ambiguous about the nature of the meeting.  It was not in writing as prescribed by the  law, nor did she state that it was a hearing.  It was entirely unclear to the Plaintiff's guardian that the meeting was a hearing.  The Principal had already verbally informed the parent at the meeting on Thursday, December 16th 2004 that George was suspended.   Therefore, she would have no basis to believe that she was going to a suspension hearing.  More likely was the parent's understanding of the meeting that the Principal had received the documents she delivered regarding the conditions that George "attend school daily," that she had contacted the attorneys and was made aware that the boys were not subjected to the dangerousness hearing, and that they would be reinstated.  The notice by the school district at this subsequent hearing was so completely inadequate and in violation of the due process requirements that it does not even come close to being found proper. .

In addition to not being given notice the Plaintiff was deprived of access to the alleged information relied upon by the Assistant Principal and Principal prior to his suspension.  He was further denied a summary of the evidence that the Assistant Principal and Principal considered relevant, and was, consequently, deprived of a meaningful opportunity to present his case.  The Plaintiff never had an opportunity to respond to the alleged evidence against him. The evidence was simply alluded to and hidden from him and his mother's view.

During the "meeting" on December 20th 2004 the Principal, operated in a manner more consistent with an investigatory effort to collect information, rather than to present the information they had against the Plaintiff.  The case law is also clear that a student faced with

long term suspension has the right to a hearing before an impartial trier of fact. <u>Newsome v.</u> <u>Batavia Local School District</u>, 842 F.2d 920 (6th Cir. 1988). Query whether the Assistant Principal, and Principal in their roles as investigator, prosecutor and trier of fact, could be impartial? In fact, the only evidence ever presented by the defendants were that they had heard the whole story from a kid in the hallway and that they knew the names of other boys who were arrested along with Hector and George Rivera. However, they never indicated what those people said or what the School District knew about the incident. The information was presented in a manner designed to illicit information from the Plaintiffs to be used against them rather than to make their case against the Plaintiff. The only documents presented remained the entire time in the hands of Mr. O'Brien and were secreted from the Plaintiff and his mother.

Most importantly there was never a finding written made by the Principal that Hector's attendance at school "would have a substantial detrimental effect on the general welfare of the school," G. L. c. 71, §37H ½. On December 16, 2004 the Principal clearly stated that she was not sure whether there was a dangerousness risk. She was aware that Hector was going to be back before the Juvenile Court the next day, December 17, 2004, for a dangerousness hearing. She specifically directed Ms. Santiago to come back to her after the Dangerousness Hearing and let her know what happened. On December 17th 2004, Ms. Santiago provided Dr. Stennett information from the Juvenile Court that none of the parties felt the either boy presented a risk to the community. This information was arbitrarily pushed to one side and ignored. This information was not addressed at the meeting on December 20th 2004, nor was it referred to after the meeting, verbally or in any written findings. The issue was never addressed and thus the defendants suspension should be enjoined in that they failed to meet the second prong of §37H ½ or in the alternative, it should be enjoined because the Principal failed to provide or present

their principals make their decisions in long-term suspension/expulsion hearings based upon a "preponderance of the evidence" presented at the hearing, and not decide such substantive issues based upon "reasonable suspicion" or alleged evidence veiled in secrecy. The defendant's Principal's acts were and are in direct contradiction to the due process requirements mandated by the United States Constitution, and are arbitrary and capricious, and should be enjoined.

### IV  THE PLIANTIFF HAS BEEN DENIED THE RIGHT OF APPEAL OF HIS SUSPENSION BEFORE THE SUPERINTENDENT OF SCHOOLS IN VIOLATION OF DUE PROCESS AFFORDING HIM THE RIGHT TO SUCH AN APPEAL.

Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights; secrecy is not congenial to truth-seeking. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729 (1975). The subject matter of the superintendent's level appeal hearing "shall not be limited solely to a factual determination of whether the student has violated any provision of the act." Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729 (1975).

Pursuant to Massachusetts statute, any student suspended by a principal may appeal the suspension to the superintendent. M.G.L. c 71, § 37H ½. The student shall notify the Superintendent of his notice of appeal no later than five calendar days following the effective date of the suspension. The Springfield Public School gives a parent/guardian twenty days to appeal the decision of the Principal. See "Exhibit E." Also pursuant to its policy the superintendent is required to hold the appeal no later than three calendar days after the student's request.

---

[3] As of February 7th, 2005, the exclusion exceeds forty five days.

23

The Plaintiff was never informed of the reasoning behind the suspension, nor was a period of time ever determined for the term of the suspension. Technically, because the Plaintiff has been precluded from school for more than forty five days, pursuant to the definitions provided by the Springfield Public Schools handbook regarding suspensions, more than 45 days is an expulsion.[4] The date which the suspension became operable is unclear. However, it is clear that on January 10, 2005, Attorney Beaulieu, in writing, requested a Superintendent's Level Appeal, directly to Dr. Burke the Superintendent. Excluding the vacation period which followed the December 20th suspension, the notice of suspension was actually received by the Defendants approximately eight or nine school days later. Since, January 10, 2005, twenty six calendar days have elapsed with no indication of when a Superintendents Level Appeal will be held in violation of its own policy, which provides for a three calendar day time period in which the appeal must be heard. *See "Exhibit E."*

The Superintendent's failure to comply with this minimal procedural safeguard amounts to a clear deprivation of the Plaintiff's right to procedural due process of law. Id. The Superintendent determination to unreasonable delay to matter has resulted in a de facto expulsion. The actions of the Principal, which are "arbitrary or capricious," could have been easily overturned by the Superintendent, especially in light of the evidence provided to the School District from the District Attorney's Office that the Plaintiff's charges were either dismissed or disposed of without a finding of guilt. The Superintendent's decision flies in the face of due process.

---

[4] From December 16, 2004 to February 7, 2005 53 calendar days have elapsed.

## ARGUMENT

**V  THE PLAINTIFF HAS MET ALL THE REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 65 (a); THEREFORE, THE COURT SHOULD ENJOIN THE DEFENDANTS FROM EXPELLING THE PLAINTIFF FROM SCHOOL.**

Four factors enter into the determination of whether or not interim injunctive relief should be granted: (a) Plaintiff's likelihood of success in the underlying dispute between the parties; (b) whether Plaintiff will suffer irreparable harm if interim relief is not granted; (c) the injury to the defendant if an injunctive is issued; and (d) the public interest.  Of the four factors, the two most important are those of probable injury to the Plaintiff if an injunction is not issued and likely harm to the defendants if an injunction is issued.  If, upon weighing them, the balance is struck in favor of the Plaintiff, a preliminary injunction should issue.  North Carolina State Ports Authority v. Dart Containerline Co., 592 F.2d 749, 750 (4th Cir. 1979).

## PROBABILITY OF SUCCESS

Due process is a flexible concept and "calls for such procedural protections as the particular situation demands."  Matthews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902 (1976).  The Plaintiff does not seek a prescription in the abstract from this Court of the procedures which must be followed in all cases of student discipline, but a determination of whether the procedures afforded to the Plaintiff by the Defendants were constitutionally adequate.

On the basis of the record now before the Court, there can be no doubt that the Defendants failed to adhere to the due process procedures required under Goss.  The Defendants

did not provide the Plaintiff with an opportunity to be heard before first deciding to exclude him from school. The content of Defendants' notice of hearing to the Plaintiff and his parent was inadequate. By refusing to present its case to the Plaintiff, either before, during or after the expulsion "hearing" and denying him an appeal, the Defendants did not afford the Plaintiff with a genuine and meaningful opportunity to respond or rebut alleged evidence. Finally, the Superintendent has allowed this case to languish, further excluding the Plaintiff from gaining access to school and like the Principal, did not act impartially or fairly upon informing the Principal to suspend without more procedural due process in place.

The defendants are obligated to provide the Plaintiff with procedural and substantive due process in carrying out their roles in disciplining students. From the inception of administrative action, the defendants abrogated their responsibility to afford the Plaintiff with constitutionally correct procedures. Their actions were clearly invalid and violated even minimal due process protections which are fundamental in the exercise of governmental authority. Clearly, for the violations there is a high probability of success.

## IRREPARABLE HARM

The total exclusion of the Plaintiff from school is a most serious event in the life of the Plaintiff. If the Plaintiff is not reinstated in Commerce High School, pending resolution of his suit on the merits, he will not advance to the tenth grade and will be forced to forego and entire school year, presuming he was able to gain entrance next year into the another school. Even if the Plaintiff ultimately prevails, he will be delayed at least a semester in his quest for a high school diploma, he will have to explain for the rest of his life why he delayed the completion of his studies for a semester (or longer), and will be permanently deprived of the opportunity to complete high school with his peers with whom he has studied and worked during the past nine

(9) years. "Although it may be difficult to put a precise dollar value on Plaintiff's damages (a question not now before the court), it is clear that Plaintiff could never be adequately compensated for these injuries, whatever their degree. In addition, a quiet exoneration at some point in the future could never fully erase the highly stigmatizing effect that the Defendants' actions against the Plaintiff have had and will continue to have, if the Plaintiff is right in his claim." Jones v. Board of Governors of University of N.C., 557 F.Supp. 263, 266 (W.D. North Carolina, 1983).

The arbitrary and illusory actions of the Defendants have resulted in a devastating and destructive effect on the Plaintiff's life. In the absence of injunctive relief, the Plaintiff will continue to be severely and irreparably harmed.

## HARDSHIP TO THE DEFENDANT

There can be no evidence of harm, substantial or otherwise, to the Defendants if the Plaintiff is reinstated as a student and allowed to complete his high school education until his serious constitutional claims are resolved. The Plaintiff only seeks open readmission to the High School of Commerce. At most, the Defendants will need to gather missed assignments and tests, grade said tests and assignments, and compute final grades. Such a burden is, at most, *de minimums*, especially in light of the irreparable harm faced by the Plaintiff. The balance of harm clearly supports the Plaintiff's position.

## PUBLIC INTEREST

The public interest is always served whenever school officials, are implementing disciplinary measures, respectfully and adhere to due process requirements. There can be no justification for the defendants or those similarly situated in carrying out, in an arbitrary and capricious manner, divorced of minimal procedural protections, their responsibility to address

27

alleged student misconduct. There is no public interest in disciplinary procedures which are a sham and are contrary to Constitutional guarantees.

## CONCLUSION

Based upon the Defendants' significant violations of procedural and substantive due process rights and the resulting irreparable harm, the Plaintiff, in the interests of fairness, respectfully moves this Court to issue a temporary restraining order and a preliminary injunction enjoining the Defendants from excluding the Plaintiff from attending the High School of Commerce, and ordering it to reinstatement him as a student at the High School of Commerce and make all available resources available to him to ensure that any missed assignments are made available to him and with possible tutorial help, if necessary, made up and graded fairly..

Respectfully submitted,
The Plaintiff
By his attorney

February 8, 2005

Derek M. Beaulieu, Esq.
1242 Main Street, Suite 306
Springfield, MA 01103
BBO#644185

### CERTIFICATE OF SERVICE

I, Derek M. Beaulieu, Attorney for **Plaintiff** hereby certify that on this eighth day of February 2005, I delivered via in hand service a copy of the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** to Peter Fenton, Esq., 1695 Main Street, Springfield MA 01103.

February 8, 2005

Derek M. Beaulieu, Esq.

28

**EXHIBIT A**

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

JUVENILE COURT DEPARTMENT
HAMPDEN COUNTY DIVISION
DOCKET NO(S): *DL0453375, 6*

COMMONWEALTH OF MASSACHUSETTS

V.

DOB: *9-14-89*

*GEORGE L. OLIVERAS* ADDRESS: *56 FOSTER ST (2ND)*
*SPFLD, MA 01105*

## MASSACHUSETTS GENERAL LAWS CHAPTER 276, SECTION 87 AGREEMENT

I agree to comply with the conditions outlined below. I understand that these conditions, when signed by all parties, will become an order of this court.

I understand that this case will be dismissed upon successful completion of these conditions within the specified time period, and that failure to comply can result in further actions against me by this court.

The term of probation from: *1-21-05*    to: *1-22-07 w/ SUPERVISION*

## THE STANDARD CONDITIONS OF PROBATION   (Strike out conditions not imposed)

① Obey all court orders and all local, state, and federal laws.
② You shall notify your probation officer immediately of any change of residence or employment.
③ You shall report to a probation officer at such time and place as he/she requires.
④ You must not leave the Commonwealth of Massachusetts without the express consent of the Probation Officer. Such permission may be conditioned upon your agreement to waive extradition.

And in addition:
- *ATTEND SCHOOL DAILY.*
- *LETTER OF APOLOGY TO MOSQUE.*
- *160 COMMUNITY SERVICE.*
- *ABIDE BY COOPERATION AGREEMENT.*

So Ordered _____ Justice

_____ Juvenile

_____ Parent or Legal Guardian

_____ Attorney for Juvenile (if applicable)

_____ Assistant District Attorney

Date: *1-21-05*

_____ Probation Officer

Any payments ordered are payable to Donald P. Whitney, Clerk-Magistrate
Hampden County Juvenile Court 80 State Street, Springfield, MA 01103
(Money Order, Bank Check, Certified Personal Check)

**COMMONWEALTH**
Juvenile Court Department - Hampden County Division

## COURT ORDERS/CHAPTER 276, SECTION 87 (IN LIEU OF BAIL) FORM

Name of Juvenile: _George L. Oliveras_

Docket Number(s): _DL0453374_

☒ You have been ordered to comply with the following conditions pending your return to court on ____1/7/05____. Failure to comply with these orders could lead to further court action such as a warrant for your arrest and placement on bail.

☐ You have been ordered to comply with the following conditions pending your return to court on _____. These conditions are imposed pursuant to Chapter 276, Section 87 and are in lieu of you being placed on bail. Failure to comply with these orders could lead to further court action such as a warrant for your arrest and placement on bail.

### COURT ORDERS/CONDITIONS

1. _Release on posted bail, obey_
2. _Zero curfew daily, except_
3. _when at school or with parent._
4. 
5. 
6. 
7. 

SO ORDERED: _Nancy Crampton Hanukala_
Justice                                      Date _12/17/04_

I have read and understand the above court orders/conditions.

_George Oliveras_                      _Madelyn Santiago_
Juvenile                                      Parent

Probation Officer                      Date _12/7/04_

Any payments ordered are payable to Donald P. Whitney, Clerk-Magistrate
Hampden County Juvenile Court  80 State Street, Springfield, MA 01103
(Money Order, Bank Check, Certified Personal Check)

Form 1

**EXHIBIT B**

# COMMONWEALTH OF MASSACHUSETTS

Trial Court of the Commonwealth
Juvenile Court Department

Hampden County Juvenile Court
Springfield Division

No.  **DL 04S3374**

IN RE:

APPOINTMENT FOR GUARDIAN AD LITEM

I, **Judith A. Locke,** Associate Justice of the Hampden County Juvenile Court, hereby appoint, **Derek Beaulieu, Esq.,** Springfield, Hampden County, Massachusetts, as **Guardian ad Litem/Next Friend** on behalf of, **George Oliveras,** date of birth, **September 14, 1989.** Said child being the child of **Jose Oliveras and Milza Rodriguez.**

The above named guardian ad litem is authorized to bill the Trial Court no more than 10 hours per fiscal year  pursuant to this appointment . If additional services are required it is the responsibility of the guardian ad litem to seek approval of additional time prior to the provision of such services.

**Judith A. Locke**
**Associate Justice**

**Date: January 7, 2005**



**EXHIBIT C**

# DEREK M. BEAULIEU, ESQ.

ATTORNEY AT LAW
1242 MAIN STREET, SUITE 306
THE HISTORIC WALKER BUILDING
SPRINGFIELD, MASSACHUSETTS 01103
—
TELEPHONE (413) 733-1824
FACSIMILE (413) 567-7746

January 10, 2005

Dr. Joseph P. Burke
Superintendent
Springfield Public School
195 State Street
Springfield, MA 01103

RE:    George Oliveras (dob 9-14-89)

Dear Dr. Burke:

Please note that I was appointed on January 7, 2005, by Judge Locke of the Hampden County Juvenile Court, to be the Guardian Ad Litem for George Oliveras. Please find attached hereto a copy of my appointment in order to facilitate future contact regarding privileged information.

Please note that George Oliveras was recently suspended from Commerce High School. It is my understanding that my client's legal guardian, Ms. Madelyn Santiago was informed by the High School of Commerce's building principal, Dr. Ann J. Stennett, and assistant principal, Mr. Thomas O'Brien, that George was being suspended pursuant to a recent felony charge. It is also my understanding that George and his legal guarding were allowed to meet with the Dr. Stennett to discuss the charges. I am therefore assuming that the suspension was pursuant to M.G.L. Chapter 71 §37H ½ and that the meeting between Dr. Stennett, my client and his mother was his due process right to respond.

After meeting with my client and his parent it is unclear to me what the time period for the suspension was determined to be. As you are also aware, the building principal is afforded the right pursuant to M.G.L. Chapter 71 §37H ½ to suspend a student for a reasonable period of time when felony charges are pending. However, M.G.L. Chapter 71 §37H ½, requires the building principal to specify what the appropriate time period is and state the reasons for the suspension. The time period and reasons must be written and provided to my client. I am therefore, requesting copies be provided to my office with respect to all documents sent to my client pertaining to this suspension.

It is also unclear to me whether this student has any special education rights that were impacted by the decision to suspend him. Therefore, I am also requesting that I be provided with the students entire educational file, which may contain testing for special education and any special education file that may be in existence.

On behalf of my client, I am also requesting a Superintendent's Level Appeal. At this appeal I will be submitting documentation that the felony charges pending against my client have been resolved without a finding guilt, or admission of delinquency. Upon submission of that documentation I expect that pursuant to Chapter 71 §37H ½ subsection (1) paragraph 2, the suspension will be overturned. If the submission of this documentation prior to the Superintendent's Level Appeal will help to expedite the process or potentially alter the position of the Springfield Public School, please let me know.

Please do not hesitate to contact my office with any questions or concerns.

Thank you for your attention to this matter.

Very truly yours,

Derek M. Beaulieu, Esq.

CC:
Regina Tate
Sandra Hill

# COMMONWEALTH OF MASSACHUSETTS

Trial Court of the Commonwealth
Juvenile Court Department

Hampden County Juvenile Court
Springfield Division

No.  **DL 04S3374**

IN RE:

## APPOINTMENT FOR GUARDIAN AD LITEM

I, **Judith A. Locke,** Associate Justice of the Hampden County Juvenile Court, hereby appoint, **Derek Beaulieu, Esq.,** Springfield, Hampden County, Massachusetts, as **Guardian ad Litem/Next Friend** on behalf of, **George Oliveras,** date of birth, **September 14, 1989.** Said child being the child of **Jose Oliveras and Milza Rodriguez.**

The above named guardian ad litem is authorized to bill the Trial Court no more than 10 hours per fiscal year  pursuant to this appointment . If additional services are required it is the responsibility of the guardian ad litem to seek approval of additional time prior to the provision of such services.

Judith A. Locke
Associate Justice

Date: January 7, 2005



**EXHIBIT D**

Springfield Public Schools          *Parent and Student Handbook 2003-2004*          page 12

___

SYSTEMIC DISCIPLINE CODE—Responsibilities
A. Responsibilities of the Home
   For success with school discipline, parent(s)/guardian(s) are expected to:
   • Keep informed about your child's behavior and achievement at school
   • Instill respect for all school staff and children
   • Support school rules
   • Consult the school principal/counselor/teacher when issues arise
   • Work with school personnel to implement appropriate consequences and/or interventions
   • Ensure that children attend school regularly and arrive on time each day
   • Communicate with school personnel about the child
B. Responsibilities of the School Staff
   Establishment of an orderly, educational environment requires that all staff model and expect appropriate behavior. Teachers/counselors/principals are expected to:
   • Explain expectations and consequences to students
   • Listen to and respect student/parent/guardian views on classroom issues
   • Establish an environment encouraging mutual respect of individuals
   • Be consistent regarding disrespectful, inappropriate behavior
   • De-escalate inappropriate behavior through management strategies
   • Follow-up on inappropriate behavior with logical consequences
   • Reach out to parent/guardian regularly to foster positive communications
   • Teach students to solve problems in a nonviolent, positive manner

## Programs To Support Academic Success

### SERVICE TEAMS

Service Teams are part of a comprehensive plan to ensure that all students receive appropriate educational and support resources that will lead to academic achievement. The problem-solving Service Teams provide a forum for analysis by the students' teachers and service providers. Issues that a Team cannot resolve are referred to the School Management Team (led by the principal and including Service Team facilitators) and the district Policy Committee (led by the Superintendent and/or designee and including principals and top management from service agencies). The goal is to review all student data, analyze issues affecting academic performance, link the student to appropriate school or district resources, and, where appropriate, link the student to social services and mental health services.

### ACADEMIC INTERVENTION PROGRAM

Each secondary school has an in-house assignment program, an academic intervention and support program which functions to provide continued services to students who for a short period of time require intervention in a self-contained classroom. This program is staffed to allow for assignment of both regular and special education students. Students whose behavior requires specialized instruction will be placed in this room for between one period and ten full school days. Special education students will continue to receive all services, including academic instruction, as dictated by the IEP's, and will have continued access to school programs. Regular education students will continue to receive academic instruction.

### ACADEMIC INTERVENTION PROGRAM—In-House Suspension Program This program, which is in

most secondary schools, is for short-term suspensions, usually up to five days.

### ACADEMIC INTERVENTION PROGRAM—District Assignment Program The Emergency Services

Program/Assessment Center (ESP/AC) provides services for students whose offenses result in long-term suspensions, as well as programs in substance abuse, conflict resolution, and academic support for

___

**Step Up Springfield!**                    **Believe, Learn, Succeed**

students who cannot be served at the school site. The goal of the ESP/AC program is to prepare the student for reentry into the school system.

## CRISIS INTERVENTION TEAMS

To comply with state physical restraint regulations, each school has developed a Crisis Intervention Team. The teams have had training in de-escalation strategies and in physical restraint. Each school has established procedures to assist colleagues in maintaining a safe educational environment.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT AGREEMENT

It is the responsibility of all school staff to report any life-threatening situations or statements expressed by students, either written or verbal, to the principal. It is the responsibility of the principal to report this information to the Student Support Police Team (Quebec Team) and School Department authorities. The school system provides training for the police and school staff to help identify indicators of potential danger. Identified students are assigned immediately to the ESP/AC program for: Review of all information relative to the incident(s), Violence prevention program, Assessments, Counseling, and Referral services (i.e., outside counseling, psychiatric evaluations). A decision regarding appropriate academic placement and needs of the student will be made by ESP/AC staff based on the results of assessments and evaluations in consultation with the student's parent(s)/guardian(s), and involved school system employees. For some incidents, the student may be arrested and taken to the Budd Juvenile Assessment Center at 450 Cottage Street (787-6360). A decision will be made regarding participation in the Diversion Program or court arraignment.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT—Guidelines For Specific Offenses

Each disciplinary case is unique and will be adjudicated according to the facts accompanying it. Efforts will be made to discipline students while maintaining them in regular school programs. Parent(s) and guardian(s) are encouraged to be involved in the disciplinary process. Intent of the act, age of the child, frequency of the offense, and student history will help determine which options are most suitable to bring about changed behavior. The principal maintains discretion in the implementation of penalties. Due process will be followed for all serious disciplinary actions. In exceptional circumstances, a student may be transferred to another school. Students may be transferred to a program that leads to high school diploma or Graduate Equivalency Diploma (GED); parents, guardians, and students must be made aware of the limitations of the G.E.D.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT—Grounds for Disciplinary Action

This section describes the offenses for which a student, in accordance with applicable law and other sections of this Code may be disciplined.

A. Possession of a dangerous weapon, possession of a controlled substance, assault and battery on a school staff member and for behavior that results in a felony charge. Massachusetts law under the Educational Reform Act of 1993, as amended, gives principals the authority to suspend or expel a student for particular offenses. This authority is, however, limited by federal special education law. The particular offenses for which a principal may suspend or expel, except where prohibited by applicable law include Possession of a dangerous weapon, Possession of a controlled substance, Assault and battery on a school staff member, and for behavior that results in a felony charge. Although the Springfield School Committee recognizes that M.G.L. Chapter 71, Section 37H and 37H1/2 confers certain discretionary authority on a principal for certain serious offenses—possession of a dangerous weapon, possession of a controlled substance, assault and battery on a school staff member; and behavior that results in a felony charge—the Springfield School Committee encourages principals to consider imposing no less than a 30-day suspension for those offenses, except where otherwise required by law.

**Step Up Springfield!**          **Believe, Learn, Succeed**

evidence as to how his presence would be detrimental to the general welfare of the school. In turn, the failure to provide this evidence denied the Plaintiff a meaningful opportunity to respond as to how his presence would NOT be detrimental to the general welfare of the school.

The Plaintiff was neither given a list of witnesses against him nor a summary of the substance of their testimony. Query whether withholding this information, which could have been summarized into a brief paragraph, allowed the Plaintiff to rebut and knowingly refute the charges against him. When the risk of error is not at all trivial, as here, it should be guarded against if that may be done without probative cost or interference with the educational process. Goss v. Lopez, 419 U.S. 565, 95 S. Ct. 729 (1975). See Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961), cert. denied, 368 U.S. 930. See also Williams v. Dada County School Board, 441, F.2d 299 (5th Cir. 1971), Keough v. Tate County Board of Education, 748 F. 2d 1077 (5th Cir. 1984).

Lastly, the Principal never issued her findings in writing, indicating the basis for her decision, the appeals process or even the length of the suspension[3] in violation of the School District's own Policy as stated therein. *See* "Exhibit E."

Given the Plaintiff's substantial interests affected by decision(s) of the Principal's refusal to employ readily available additional procedural safeguards which would impose minimal administrative burdens resulted in a fatally flawed proceeding. School Districts must insure that all principals faced with the decision to impose a long-term suspension or expulsion, not serve as investigator and not present the school's case. School districts also must insure that all parties are, in fact, on the same page, and provide adequate prior notice, including a list of school witnesses and a summary of summary of their testimony. School districts also must insure that

- Possession of a dangerous weapon, possession of a controlled substance, assault and battery on a school staff member. M.G.L. Chapter 71, Section 37H indicates specific offenses relating to weapons, drugs and assault of a staff member that gives principals authority to suspend or expel. The statute provides in relevant part:
- Any student found on school premises or at school-sponsored or school-related events, including athletic games, in possession of a dangerous weapon, including, but not limited to, a gun or a knife, or a controlled substance as defined in chapter ninety-four C, including, but not limited to marijuana, cocaine, and heroin, may be subject to expulsion from the school or school district by the principal.
B. Any student who assaults a principal, assistant principal, teacher, paraprofessional, or other educational staff on school premises or at school-sponsored or school-related events, including athletic games, may be subject to expulsion from the school or school district by the principal.
- Any student who is charged with a violation of either paragraph (A) or (B), above, shall be notified in writing of an opportunity for a hearing; provided, however, that the student may have representation, along with the opportunity to present evidence and witnesses at said hearing before the principal. After said hearing, a principal may, in his or her discretion, decide to suspend rather than expel a student who has been determined by the principal to have violated either paragraph (A) or (B). Any student who has been expelled from a school district pursuant to these provisions shall have the right to appeal to the Superintendent. The expelled student shall have ten days from the date of the expulsion in which to notify the Superintendent of his or her appeal. The student has the right to counsel at a hearing before the Superintendent. The subject matter of the appeal shall not be limited solely to a factual determination of whether the student has violated any provisions of this section. When a student is expelled under the provisions of this section, no school or school district within the commonwealth shall be required to admit such student or to provide educational services to said student. If said student does apply for admission to another school or school district, the superintendent of the school district to which the application is made may request and shall receive from the Superintendent of the school expelling said student a written statement of the reasons for said expulsion. [M. G. L. ch. 71, 37H (a)-(e)]
In addition to the preceding, a police report will be filed for assault and battery offenses on school staff. A student en route to or from a school-related function who commits an assault and battery on a bus driver, including a PVTA driver, will be suspended and sent to the Assessment Center, and may lose the privilege of bus transportation for the remainder of the year.
- Behavior that results in a felony charge: Principals have the authority to suspend or expel for behavior, including off campus behavior, which results in a felony charge. (M.G.L. Chapter 71, Section 37H 1/2) Except where prohibited by applicable law, in these cases, the principal may suspend if the student is charged, and expel if convicted, after the principal holds a hearing and determines the student will be a detriment to the school.
- Egregious acts of violence, use or sale of illegal drugs and alcohol on school property, and arson. The number of days for long-term suspensions is determined by the incident, the pattern of behavior that allows a judgment regarding the danger of the student to self and others, and the ability of the student to respond to a specific program. Students who are found to present a clear and present danger to self and others will, except where prohibited by applicable law, receive services through the ESP/AC program for up to 45 calendar days and may be subject to expulsion; students who present a potential danger will receive shorter suspensions either at the school or at the ESP/AC. For offenses requiring long term external suspension, a determination will be made regarding the student's risk for inappropriate/illegal behavior prior to reentry to the school. Except where prohibited by law, a student may be subject to long term suspension under this section for the following school related disciplinary offenses:
- Egregious acts of violence (i.e., assault and battery) of students. In cases of egregious acts of violence with intent to harm a student, in addition to long-term suspension, the student is subject to expulsion.

**Step Up Springfield!**                    **Believe, Learn, Succeed**

Springfield Public Schools

*Parent and Student Handbook 2003-2004*

page 15

- Use or sale of illegal drugs, including alcohol, on school property. If a student is in possession of a controlled substance, he/she is subject to long-term suspension or expulsion. In cases involving alcohol/drug usage or possession in school, and when the student is suspended to the ESP, as a condition of reentry the student should be evaluated by a therapist at a substance abuse treatment agency and receive treatment services as needed.
- Arson or attempted arson. A student involved in arson or attempted arson is subject to a variety of consequences up to and including expulsion.

## POLICE DEPARTMENT/SCHOOL DEPARTMENT—Additional Grounds for Discipline

The School Committee voted the following policy:

1 Gang-related activities including but not limited to recruitment and/or wearing of gang-related colors is prohibited on school grounds or at activities sponsored by schools, and constitute grounds for suspension or expulsion.

2 All electronic devices, which include but are not limited to beepers, portable telephones, electronic games, walkmans and earphones, are prohibited from school grounds. Bringing such devices to school may, depending on the circumstances, constitute sufficient grounds for confiscation, detention, parental conference, or, for repeated offenses, suspension. For special events (i.e., field trips), the principal may suspend this rule. The school system is not responsible for loss of confiscated items.

3 Conduct that is indecent, lewd, insulting, or demeaning is prohibited on school grounds, as is the use of obscene and/or profane language and gestures. Violation of this rule may constitute grounds for suspension.

4 Individuals—adults or minors—who trespass on school property can expect to be arrested. This includes youth who are enrolled in other schools but are not students in the school where they are trespassing.

5 Students are to identify themselves to any school personnel (teacher, administrator, police/security person) upon request. Failure to do so is grounds for suspension.

If interpretation of the above rules is necessary, the determination of the principal, using reasonable person standards, shall govern the interpretation. Other offenses that may lead to disciplinary action include:

- Under the influence of alcohol, but not in possession (principal or designee determines if student is "under the influence")
- Defiance of authority (insubordination)
- Offensive or disruptive behavior
- Bus misconduct
- Classroom disruption
- Vandalism, breaking and entering, theft, disruptive or violent behavior
- Profanity, obscene language, possession of obscene material
- Fighting (mutual combative situation)
- Truancy (from class and from school) tardiness (for school or class)
- Smoking
- Possession of laser pointer
- Violation of Civil Rights—Students have the right to be free from discrimination based on race, national origin, religion, gender, sexual orientation or disability, sexual harassment, hazing. The nature and complexity of the offense determine the options to be used by the principal and the designee of the Superintendent, in consultation with the City Law Department or the District Attorney's Office. A violation of any state or federal law could lead to suspension or expulsion.
- Any disruptive action(s) of a student(s) in a particular situation may constitute grounds for suspension or expulsion. The circumstances of each case will be assessed by the appropriate administrator, using the reasonable person standard.

**Step Up Springfield!**                    **Believe, Learn, Succeed**

**EXHIBIT E**

- Leniency Request Form indicating the reasons for denying leniency and supporting a long-term suspension or expulsion
- Documentation of the due process hearing at the school
- Manifestation determination where required
- Documentation of IEP Team meeting where required
- Functional Behavioral Assessment where needed

The following are the options for consequences that will be implemented by the central office administrator as a result of the Incident Review Process:

1. Long-term suspension to the Assessment Center for up to 45 calendar days
   - with reentry to the sending school following the suspension
   - with transfer to another school at the end of the suspension
2. Expulsion
3. Transfer to alternative school
4. A report to the police and/or DSS when warranted.

## GUN-FREE SCHOOL ACT

Any student who is determined to have brought a firearm to school or to a school-related function shall be excluded from the Springfield Public Schools for a period of not less than one year, except as determined by the Superintendent on a case-by-case basis. The definition of "firearm" for purposes of this section includes, but is not limited to, guns (including a starter gun), bombs, grenades, rockets, missiles, mines, and similar devices.

## PROCEDURAL STEPS/DUE PROCESS for SUSPENSION

In all suspensions, principals will follow due process. For long-term suspensions, the due process procedures require the principal to submit a documented checklist with signatures of the principal and involved personnel and with recommendation for leniency, if appropriate, in the Appeals process. The major offenses for long-term suspensions listed above must have a police report. (This does not necessarily mean that charges will or must be pressed.)

All appeal hearings involving staff assault and staff assault and battery or using weapons in a life-threatening situation will, after the initial hearing at the school, be held at the Central Office with the designee(s) of the Superintendent who will review all such staff assaults. The teacher involved will be invited to the appeal hearing. Regarding staff assaults and battery, teachers should be encouraged to bring charges, understanding if there is "reasonable cause" (i.e., severe circumstances) that they will have the full support of the School Committee, School Administration, Police Department and the Law Department. If threatened by possible retaliation, a teacher should notify the police. Also, teachers should understand that, should court appearances be necessary, reporting of assaults will not result in adverse evaluations or loss of pay.

## PROCEDURAL "DUE PROCESS"

Due Process, as detailed below will be afforded to all students subject to discipline and shall include the following procedures. (With respect to children with special needs, cumulative suspensions cannot generally exceed ten school days in any school year without following the procedures set forth in the "DISCIPLINE-RELATED INFORMATION FOR STUDENTS WITH SPECIAL NEEDS" section of this Code):

- Hearing notification of charges and due process procedures; a presentation of the evidence against the student will be stated by the Hearing Officer (principal or designee) at the school. [After reasonable attempts to contact, if the pupil/parent(s)/guardian(s) do not appear at the hearing without good cause,

Springfield Public Schools    *Parent and Student Handbook 2003-2004*    page 18

this will constitute a waiver of the hearing and the case shall be reviewed by the Hearing Officer. A decision will be rendered on the evidence available.]

- Opportunity to respond to charges in front of an impartial adult; a presentation by the student and parent(s)/guardian(s) or designee (individual) of any defense or mitigating circumstances. A student eighteen (18) years of age or older may, upon request in writing, exclude his/her parent(s)/guardian(s) from the hearing.
- Opportunity to present witnesses if necessary; submission of the written statements from any person in defense of the student will be accepted by the Hearing Officer (principal or designee).
- Notification of all evidence; the Hearing Officer (principal or designee) shall record a summary of the facts and disputed evidence. The Hearing Officer shall have the discretion to take whatever action is necessary to clarify facts, but the student should be informed of all actions.
- Right to know the outcome; on the same date as the hearing, a decision with the reasons will be given to the student and parent or guardian. The decision may authorize return to school at an earlier date, and may include an alternative educational plan or evaluation request under special education law.
- Right to appeal; if the parent/guardian or pupil disputes the decision of the Hearing Officer, the student or parent/guardian may, within 20 days of the date of the decision, request a review of the decision by the Superintendent's designee. This request must be in writing and specify the grounds for which the review is requested. The Superintendent's designee will review the decision of the Hearing Officer directly with the principal and parent/guardian prior to notifying them of any decision, and will notify the parents/guardians of the results of the review within three school days of receipt of the request. The Superintendent's designee may not increase the terms of the suspension, but may reduce or modify them in any manner if the child is still on suspension at the time of the review. Failure to follow procedures may result in the suspension being revoked based on technicalities.

## LAWS REGARDING DRUGS, ALCOHOL, FIREARMS GANG-RELATED ACTIVITIES

In addition to school disciplinary measures regarding drugs, alcohol and gang-related activities, the following state laws are currently in effect:

- Use of Fake I.D. to Purchase Alcohol —6 months to 1 year loss of license. Use of a fake I.D. to purchase alcohol or providing false information to obtain a liquor I.D. or duplicate license from the Registry of Motor Vehicles will result in the loss of driver's license for 6 months to a year. Also, fines and a jail sentence may be imposed by the courts.
- Any Drug Conviction, Including Possession—up to 5 years loss of license. Conviction for a drug offense, including possession of even a small amount of an illegal drug, will result in the loss of driver's license for up to 5 years in addition to court ordered penalties. If younger than 18, the issuance of driver's license may be delayed until age 21.
- Dealing Drugs Near Schools—Mandatory 2-year jail sentence. A conviction for selling drugs within 1000 feet of school property in Massachusetts will result in a minimum mandatory two-year jail sentence plus a fine of up to $10,000.
- Carrying a Firearm—Whoever, not being a law enforcement officer, and notwithstanding any license obtained by him under the provisions of Chapter 140, carries on his person a firearm as hereinafter defined, loaded, or other dangerous weapon in any building or on the grounds of any elementary or secondary school ... without the written authorization of the board or officer in charge of such elementary or secondary school ... shall be punished by a fine of not more than $1,000.00 or by imprisonment for not more than one year, or both. "Firearm" shall mean any pistol, revolver, rifle, or smoothbore arm from which a shot, bullet, or pellet can be discharged by whatever means. Any officer in charge of an elementary or secondary school ... or any faculty member or administrative officer ... failing to report violations of this paragraph shall be guilty of a misdemeanor and punished by a fine of not more than $500.00.

---

**Step Up Springfield!**                    **Believe, Learn, Succeed**

**AFFIDAVIT OF DEREK M. BEAULIEU**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| George Oliveras<br>                Plaintiff<br><br>v.<br><br>CITY OF SPRINGFIELD, SPRINGFIELD PUBLIC<br>SCHOOLS, SUPERINTENDENT DR. JOSEPH<br>P. BURKE, PRINCIPAL DR. ANN STENNETT,<br>ASSISTANT PRINCIPAL MR. THOMAS<br>O'BRIEN, ASSISTANT PRINCIPAL MR.<br>KOLAJO AFOLABI<br>                Defendants | CIVIL ACTION NO. |

## AFFIDAVIT OF DEREK M. BEAULIEU

I, Derek M. Beaulieu, hereby depose and state that:

1. I am an attorney admitted to practice before the courts of the Commonwealth of Massachusetts, Connecticut and the Federal Bar.

2. I represent the Plaintiff in the above-entitled action.

3. On January 7th 2005, I was appointed by the Juvenile Court as Guardian Ad Litem for purposes of advocating for Hector Rivera and George Oliveras with regards to their being suspended from the Springfield Public Schools.

4. On January 10th, 2005 I wrote a letter of representation to Dr. Thomas Burke, Superintendent of the Springfield Public Schools requesting information both oral and written regarding the decision of the building principal, the nature and length of the suspension, and to be provided with any relevant documentation.

5. In the letter of January 10th 2005, I stated the following: "I am also requesting a Superintendent's Level Appeal. At this appeal I will be submitting documentation that the felony charges pending against my client have been resolved without a finding guilt, or admission of delinquency. Upon submission of that documentation I expect that pursuant to Chapter 71 §37H ½ subsection (1) paragraph 2, the suspension will be overturned. If the submission of this documentation prior to the Superintendent's Level Appeal will help to expedite the process or potentially alter the position of the Springfield Public School, please let me know."

6. On or about Thursday, January 20, 2005, I was contacted by telephone on behalf of the Springfield Public Schools by Attorney Peter Fenton. Attorney Fenton indicted that he had been asked by the Springfield Public Schools to handle the matter pertaining to George Oliveras and Hector Rivera. In was his understanding that neither child was special education students and that this was a matter exclusively governed by M.G.L Chapter 71 §37H ½. I stated to Attorney Fenton that both matters had already been resolved without a finding of guilt. I indicated that pursuant to section 37H ½ the school district had to prove not only that the student in question had been charged with a felony, but that he must be found guilty of the felony to be permanently excluded. I stated it was my belief that there were many procedural inadequacies in the School District's handling of the suspension, namely the lack of any written documentation about the nature of the allegations against them or the specific nature charges, names of any accusers, and lastly what their rights pursuant to the suspension/expulsion process had been violated. Attorney Fenton indicated that the School District suspected the boys of pulling fire alarms in the past and that the

administration at Commerce High School really did not want them in or at Commerce High School. He stated that they wanted to put them at MCDI, the Springfield Public School's alternative school. On behalf of Hector Rivera and George Oliveras, I stated that they wanted to be placed back at Commerce High School and that they had a right to be in the mainstream. There was then a brief discussion with respect to whether any tutorial services had been provided. Attorney Fenton indicated that he would gather information regarding whether the tutorial had been in place and ascertain the position of his client with respect to whether they would reinstate the students. He concluded by stating that he would respond the following day.

7. On Tuesday January 25, 2005, Attorney Fenton contacted me by telephone and stated that his clients, the Springfield Public Schools wanted to place both Hector Rivera and George Oliveras at MCDI. He stated that he had spoken with Assistant District Attorney, Brett Vottero at the District Attorney's Office and confirmed that the Plaintiff and his cousin had received dispositions pursuant to M.G.L. Ch. 276 §87 and as such they were not found guilty of felony charges. Assistant District Attorney, Vottero also informed him that the arson charges had been *nolle prosed*. I responded to Attorney Fenton that pursuant to the law M.G.L. Ch. 71 §37H ½ that because neither boy had been found guilty of a felony, nor were they found dangerous or disruptive to the school or community, that they had to be reinstated immediately. I stated that if the Springfield Public Schools wanted to perform behavioral and or psych-educational testing once they were reinstated, because it believed the boys belonged in an alternative placement, then it was entitled to do that, but that was an entirely different process and an entirely separate matter. With respect to the instant matter they had to be

reinstated. In this phone conversation, I specifically requested again to Attorney Peter Fenton that if the School District did not reinstate them at once, they wanted their Superintendent's Level Appeal as initially requested on January 10th 2005.

8. On January 26, 28, 31, and February 2, 2005, I left messages with Attorney Fenton's Office to please return my phone calls regarding the status of this matter. As of February 8th 2005 neither the School District or its attorney have responded.

9. The foregoing facts are true and accurate to the best of my knowledge and belief, under the pains and penalties of perjury.

Dated February 8, 2005

Derek M. Beaulieu, Esq.
1242 Main Street, Suite 306
Springfield, MA 01103
BBO# 644185
(413) 733-1824
Fax (413) 567-7746

**AFFIDAVIT OF MADELYN SANTIAGO**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| George Oliveras, | } | |
| Plaintiff | } | |
| v. | } | CIVIL ACTION NO. |
| | } | |
| CITY OF SPRINGFIELD, SPRINGFIELD PUBLIC | } | |
| SCHOOLS, SUPERINTENDENT DR. JOSEPH | } | |
| P. BURKE, PRINCIPAL DR. ANN STENNETT, | } | |
| ASSISTANT PRINCIPAL MR. THOMAS | } | |
| O'BRIEN, ASSISTANT PRINCIPAL MR. | } | |
| KOLAJO AFOLABI | } | |
| Defendants | } | |

## AFFIDAVIT OF MADELYN SANTIAGO

I, Madelyn Santiago, hereby depose and state that:

1. I am a natural person residing at 56 Foster Street Springfield Massachusetts

2. I am the parent of Hector Rivera and the permanent guardian of George Oliveras, who both reside with me.

3. On or about December 16, 2004, I went to the High School of Commerce with my boys George Oliveras and Hector Rivera. Upon entering the building Mr. O'Brien, the assistant principal, said to Hector "what are you doing here." Ms. Kowalski the mediation teacher also said to Hector "what are you doing here." I stated them both he is here with me. We then went through the doors to the main office and requested to speak with the principal Dr. Stennett. The secretary at the main office, Maria, said she is busy. We waited more than one hour in the main office before being brought into Dr. Stennett's Office.

4.  At approximately 11 A.M. we met with Dr Stennett and Mr. O'Brien in the principal's office.
    I told Dr. Stennett that I came here with my kids because of the problem after school. I also
    wanted to tell her the Court said they needed to go to school. She said that she heard about it,
    but that she had to wait for Dr. Burke, the Superintendent to call to see about the process.
    While we were in her office she placed a call to the Superintendent. While she was waiting
    on the phone to speak with Dr. Burke the Superintendent, Mr. O'Brien spoke up and said to
    the boys that there is a law in the school that if they are charged with a felony they not
    allowed back to Commerce High School. Then he said to me that we are going to suspend
    the boys and place them at one of the alternative schools. Dr Stennett then placed the phone
    to one side of her head and said that one of the regulations of the school is to suspend the
    boys 30 days plus, until this matter is over in court. Dr. Stennett then spoke with Dr. Burke
    on the phone for a brief time, then hung up. She said that Dr. Burke said until this matter is
    over, or until we can find out whether they are charged with a felony or misdemeanor, that
    the Springfield Public School are suspending the boys. She then said that in the meanwhile
    we will decide if we want them back in this school or are going to place them in other
    schools. She also said that in the case they are charged with a felony that they are not
    allowed to come back to Commerce or any of the Springfield Schools, but in the event that
    they are charged with misdemeanor, the kids are allowed to come back to Commerce High
    School. Then Mr. O'Brien said to me, I do not understand how your kids got involved in
    this, but these are the regulations in school that we have to follow. Then Dr. Stennett said
    that she did not want the kids back in school because she did not know whether they were
    dangerous to the other kids or the premises. She then stated that she and the Superintendent

did not want my boys on any school premises. She said that she was aware that the kids were going to be back before the Juvenile Court for a dangerousness hearing on December 17, 2004. She stated that if they were found by the court to be dangerous then they would not be allowed in any Springfield School. She told me after that hearing to come back and let her know what happened. She concluded the meeting by stating that they would gather all the boy's homework assignments and send it home later that day with my other child who attends Commerce High School. The meeting was concluded at approximately 1:25 A.M.

5. On December 17, 2004 we went to Juvenile Court in Springfield and met with boy's probation officers Jerry Sabilia and Bob Martin. They each provided me with a copy of the conditions of release the District Attorney's Office, Probation, the Judge, the attorneys, the boys and I had agreed to. They explained to me that the conditions were that the boys maintain zero curfew. They said that meant that they are supposed to attend school daily, and after school they had to stay at home. They said if they went anywhere it had to be supervised by me. They also said there was not going be a dangerousness hearing because no one felt it was necessary.

6. At approximately 12:30 in the afternoon I brought the paperwork, plus the lawyers cards to Commerce High School to give them to Dr. Stennett. The lawyers had given me their cards so that if Dr. Stennett had any questions she could call them. I was then told by Maria, the secretary at the main office, that Dr. Stennett did not have time to see me. Maria took copies of all the papers, the lawyer's cards, and I watched her put it in Dr. Stennett's mail box. Maria also wrote down a message from me saying to contact me today regarding this matter. I left two phone numbers for her to reach me at.

7.  At 5:30 that evening Dr. Stennett left a message on the phone saying that we have an appointment at Commerce High School at 9 A.M. on December 20th 2004. I though the meeting was going to be about letting the boys go to school. I figured that she got the papers from the court and she talked to the lawyers and she was going to let my boys back into school.

8.  On December 20th 2004 me and my boys went to the meeting that morning. Present for the school was Dr. Ann Stennett, the principal, and Mr. Thomas O'Brien, and Mr. Kolajo Afolabi, assistant principals. Dr Stennett started the meeting asking Hector and George if they were involved in pulling fire alarms in the school a couple of weeks before. Hector immediately said "hell no." George also said "no." Dr. Stennett and Mr. O'Brien both asked if they were special education kids. The boys each said they were not. Mr. O'Brien went first. He told Mr. Afolabi to take notes about the meeting. He had papers in his hand and he was referring to them saying that he had papers that were the school regulations. Mr. O'Brien said something about a law with a ½ at the end. He said if the kids are found guilty of a felony they are not allowed back to Commerce High School, but if they are guilty of misdemeanor they can come back to Commerce. He stated that in the meantime they would give them their work from school. He then said the kids are not allowed on the premises of any Springfield School or they can be arrested and charged with trespassing. Next he said that Mr. Afolabi and the other principals and the Quebec team are going to be on the lookout for them on the premises. Then Mr. Afolabi said that if he sees the kids he will contact Dr. Stennett and take appropriate action against them. Dr Stennett spoke up at that point and asked the boys if they would write a written statement about the charges against them. They

both refused because their lawyers advised them not to talk or write about anything. Dr. Stennett and Mr. O'Brien then tried to convince them to write statements. Mr. O'Brien said that even if they don't want to write a statement "that's okay because we know everything about it from a kid that was talking about it in the hall way." They never told us his name or what that boy from the hallway had said. He kept talking about the papers in his hand and saying that the papers he had told them what happened on that day. He also stated that he had names. Then he started mentioning names like Carlos Escalera, Ruben Parez and Andres Gonzales and Charlie Garcia and Jose Mezonnette. After he said all the names he said to the boys are you sure you don't want to make a statement, they again said no. Dr Stennett said they knew that the boys had court on January 7th, 2005. She said that depending on that maybe they would let the boys back into school. She said that she would wait for Dr. Burke to call and tell them what to do. Dr. Stennett then abruptly said that they had a meeting with other parents so they had to conclude the meeting. I got up and walked out never having got to see the papers Mr. O'Brien had in his hand and I never got copies of any papers to take with me.

9.  On December 22nd 2004, I went back to the High School of Commerce to get forms verified by the school for "Workfare Program" that both boys participated in. While in the main office I asked for the boy's homework that was promised. I waited a long time for them to call his teachers, then after a while the secretary gave me one assignment for George from his Italian class and one assignment for Hector from his Physical Education class. They told me that after Christmas Vacation they would send home all the homework and missing assignment with my other son who attends the High School of Commerce.

10. After December 22nd 2004, I have called Dr. Stennett approximately six or seven time to see
what's going on.  Every time the secretaries have put me through to her voice mail and I
leave messages with my phone number and she has never retuned my calls.  Since December
20th 2004, I have not received anything in writing about the suspension.  I heard from other
parents that they received letters about a 30 day, plus, suspension, but I have not received
mine for either boy.  Since December 22nd, 2004 I have not received any home work for the
boys to complete.

11. The foregoing facts are true and accurate to the best of my knowledge and belief, under the
pains and penalties of perjury.


Dated:  February 8, 2005

Madelyn Santiago

## COMMONWEALTH OF MASSACHUSETTS

Hampden, ss.

Then personally appeared before me the above-named Madelyn Santiago and
acknowledged the forgoing statements to be true to the best of her personal knowledge,
information and belief.

, Notary Public

My Commission Expires:  1 27 07

of state and local government." <u>Brown v. Board of Education Topeka</u>, 347 U.S. 483, 493 S. Ct. 686, 691 (1954). As the City of Springfield, pursuant to state law, has chosen to extend the right to an education to people of the Plaintiff's class generally, it may not withdraw that right on grounds of misconduct pursuant to M.G.L. Chapter 71 §37H½ "absent fundamentally fair procedures to determine whether the misconduct has occurred." <u>Goss v. Lopez</u>, 419 U.S. 565, 573, 95 S.Ct. 729, 736 (1975).

The Fourteenth Amendment, as applied to state and local governmental entities, protects citizens against the State itself and all of its creatures - the "Board of Education not excepted." <u>West Virginia Board of Education v. Barnette</u>, 319 U.S. 624, 637, 635 S.Ct. 1178, 1185, 87 L.Ed 1628 (1943). The authority possessed by the state to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with Constitutional safeguards. <u>Goss v. Lopez</u>, 419 U.S. 565, 573, 95 S.Ct. 729, 736 (1975). Among other things, the Springfield Public Schools and its employees are constrained to recognize the Plaintiff's legitimate entitlement to complete his public education as a property interest which is protected by the Due Process Clause and which may not be taken away for alleged misconduct without adherence to procedures required by that Clause. <u>Id.</u>

The Due Process Clause also forbids arbitrary deprivations of liberty. "Where a person's good name, reputation, honor or integrity is at stake because of what the government," does, "then minimal requirements of the clause must be satisfied." <u>Id.</u> If not sustained, the charges against the Plaintiff will continue to damage their standing with their peers and teachers as well as seriously interfere with their opportunities for higher education and employment. <u>Id.</u> The long term suspension/expulsion has clearly impacted the Plaintiff's liberty interest in his good

name.  The claimed right of the School District to determine unilaterally, without due process and without compliance with minimal prescribed procedures of M.G.L Chapter 71 §37H½, collides with the requirements of the Constitution.  Young people do not "shed their Constitutional rights" at the school house door.  Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736 (1969).

## FACTUAL ALLEGATIONS

Hector Rivera is fifteen years old and was enrolled as a freshman at the High School of Commerce in Springfield, Massachusetts.  Hector resides at 56 Foster Street in Springfield Massachusetts with his mother Madelyn Santiago and his cousin George Oliveras, also fifteen years old.  Madelyn Santiago is the legal guardian of George Oliveras.

On or about December 14, 2004 Hector Rivera and his cousin George Oliveras were arrested by the State Police and Springfield Police Department and charged with delinquency felony counts of arson, breaking and entering and destruction of private property.  Both boys were held at the Department of Youth Services facility in Westfield while awaiting arraignment and a bail hearing.

On December 16, 2004, Hector and George were brought to the Juvenile Court in Springfield for the arraignment and bail hearing.  The District Attorney did not ask for bail and Hector and George were released to Madelyn Santiago's custody with several conditions imposed by the Court.  Immediately upon obtaining physical custody of Hector and George, Ms. Santiago brought them to the High School of Commerce.  Upon entering the building she was met by Assistant Principal, Mr. Thomas O'Brien.  Ms. Santiago observed Mr. O'Brien, say to Hector "what are you doing here."  Ms. Kowalski, the mediation teacher also stated to Hector "what are you doing here."  Ms. Santiago replied to them that she had brought Hector and George

3