UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE OLIVERAS } | |
|         Plaintiff } | |
| v. } | CIVIL ACTION NO. 05-3045 MAP |
| } | |
| CITY OF SPRINGFIELD, SPRINGFIELD PUBLIC } | |
| SCHOOLS, SUPERINTENDENT DR. JOSEPH } | |
| P. BURKE, PRINCIPAL DR. ANN STENNETT, } | |
| ASSISTANT PRINCIPAL MR. THOMAS } | |
| O'BRIEN, ASSISTANT PRINCIPAL MR. } | |
| KOLAJO AFOLABI, SPRINGFIELD SCHOOL } | |
| COMMITTEE } | |
|         Defendants } | |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is an action for declarative and injunctive relief, together with compensatory and punitive damages, and attorney's fees and costs, to review and to enjoin decisions of the Principal, and Assistant Principals of the High School of Commerce to suspend and expel the Plaintiff, as members of the freshman class, and the failure of the Superintendent of Schools to hear the matter on appeal. Contrary to the requirements of the Fourteenth Amendment of the United States Constitution and Articles I and X of the Massachusetts Declaration of Rights, the Defendants denied the Plaintiffs procedural and substantive due process in excluding them from school for alleged misconduct.

### JURISDICTION

2. Jurisdiction is premised on 28 U.S.C. § 1331; 28 U.S.C. § 1343 (a); 28 U.S.C. § 1367; 42 U.S.C. § 1983; and 5 U.S.C. § 704.

## PARTIES

3. Plaintiff, George Oliveras, is a natural citizen of Massachusetts, residing at 54 Foster Street, Springfield, Hampden County, Massachusetts. (Hereinafter, "George").

4. Defendant, City of Springfield, Massachusetts, is the town or municipality through its public schools, which is charged by law with providing students similarly-situated to George with a free, public education, including high school (courses) of study.

5. Defendant, Dr. Joseph P Burke, Superintendent of Schools, in his official and individual capacities, is charged with managing the Springfield Public Schools consistent with state law and the policy determinations of the School Committee.

6. Defendant, Dr. Ann Stennett, Principal, in her official and individual capacities, is the educational administrator and manager of the High School of Commerce, and may, pursuant to state law, suspend and expel students for specifically enumerated misconduct.

7. Defendant, Mr. Kolajo Afolabi, Assistant Principal, Springfield High School, in his official and individual capacities, is a building administrator under the direct supervision of the Principal, who regularly makes decisions regarding the suspension of students.

8. Defendant, Springfield School Committee, whose members include Charles V. Ryan, Mayor/Chairman, Thomas M. Ashe, Vice Chairperson, Marjorie J. Hurst, Esq., Jennifer Murphy, Antonette Pepe, Michael Rodgers, Kenneth E. Shea, Esq. in their official and individual capacities, is the body authorized by law to select the superintendent and establish goals and policies for the schools in the district consistent with the requirements of law.

## FACTUAL ALLEGATIONS

9. George Oliveras is fifteen years old and was enrolled as a freshman at the High School of Commerce in Springfield, Massachusetts.

10. George resides at 56 Foster Street in Springfield Massachusetts with his aunt Madelyn Santiago and his cousin Hector Rivera, also fifteen years old. Madelyn Santiago is the legal guardian of George Oliveras.

11. On or about December 14, 2004 George Oliveras and his cousin Hector Rivera were arrested by the State Police and Springfield Police Department and charged with delinquency felony counts of arson, breaking and entering and destruction of private property. Both boys were held at the Department of Youth Services facility in Westfield while awaiting arraignment and a bail hearing.

12. On December 16, 2004, George and Hector Rivera were brought to the Juvenile Court in Springfield for the arraignment and bail hearing. The District Attorney did not ask for bail on that date and George and Hector were released to Madelyn Santiago's custody with several conditions imposed by the Court.

13. Immediately upon obtaining physical custody of George and Hector, Ms. Santiago brought them to the High School of Commerce.

14. Upon entering the building she was met by Assistant Principal, Mr. Thomas O'Brien. Ms. Santiago observed Mr. O'Brien say to Hector "what are you doing here." Ms. Kowalski, the mediation teacher also stated to Hector "what are you doing here." Ms. Santiago replied to them that she had brought George and Hector back to school.

15. Ms. Santiago went directly to the main office and requested to speak with the Principal, Dr. Ann Stennett. The secretary at the main office, Maria, stated to Ms. Santiago that Dr.

3

        Stennett was busy and could not see them at that time, but that they could wait. Ms. Santiago waited more than one hour in the main office before being brought into Dr. Stennett's Office.

16. At approximately 11 A.M. Ms. Santiago, George Oliveras and Hector Rivera met with Dr Stennett and Mr. O'Brien in the Dr. Stennett's office. Ms. Santiago informed Dr. Stennett that she had brought to boys to the school and that the Juvenile Court had imposed a condition on them that they attend school daily. Dr. Stennett said that she had already heard about the arrests, although she did not specify how or by whom. Dr. Stennett informed Ms. Santiago that she had to wait for Dr. Burke, the Superintendent to call to see about the process.

17. Ms. Santiago, George and Hector waited in Dr. Stennett's office while she placed a call to the Superintendent's Office. While Dr. Stennett was waiting on the phone to speak with Dr. Burke, Mr. O'Brien spoke up and said to George and Hector that there is a law in the school that if they are charged with a felony they would not be allowed back in to Commerce High School. He then stated to Ms. Santiago that the School District was going to suspend the boys and place them at one of the alternative schools.

18. Dr Stennett then removed the phone away from her mouth and said to Ms. Santiago, George and Hector that one of the regulations of the school is to suspend the George and Hector for thirty (30) days plus, until this matter is over in court. Dr. Stennett then placed the phone back over her mouth and spoke with Dr. Burke on the phone for a brief time, then hung up.

19. Dr. Stennett said that Dr. Burke said to her that until this matter is over, or until the School District can find out whether they are charged with a felony or misdemeanor, that

4

       the Springfield Public School are suspending the boys. She then said that in the meanwhile the School District will decide if we want them back in this school or if they would be placing them in other alternative schools. Dr. Stennett then stated that in the event that they are charged with a felony, that they are not allowed to come back to Commerce or any of the Springfield Schools. She then stated that in the event that they are charged with misdemeanors, they would be allowed to come back to Commerce High School.

20. Mr. O'Brien then stated to Ms. Santiago, "I do not understand how your kids got involved in this, but these are the regulations in school that we have to follow." Dr. Stennett then informed Ms. Santiago that she did not want the kids back in school because she did not know whether they were dangerous to the other kids or the premises.

21. Dr. Stennett then stated that she and the Superintendent did not want either George or Hector on any school premises.

22. Dr. Stennett stated that she was aware that George and Hector were going to be back before the Juvenile Court for a dangerousness hearing on December 17, 2004. She stated that if they were found by the court to be dangerous then they would not be allowed in any Springfield Public School. She then stated to Ms. Santiago to come back to her after the Dangerousness Hearing and let her know what happened. She then concluded the meeting by stating to Ms. Santiago, that they would gather all the boy's homework assignments and send them home later that day with Ms. Santiago's other child who also attends Commerce High School.

23. The meeting was concluded at approximately 1:25 A.M.

5

24. On December 17, 2004 Ms. Santiago, George Oliveras and Hector Rivera went to the Juvenile Court in Springfield and met with each of the boy's probation officers, Jerry Sabilia and Bob Martin, respectively.

25. Ms. Santiago was provided by the probation officers with a copy of the conditions of release, the District Attorney's Office, Probation, the Judge, the attorneys for George and Hector, Ms. Santiago had agreed to in exchange for being released into the community while waiting for the disposition. Please find attached hereto the Conditions of Release from the Juvenile Court attached hereto and incorporated by reference as "Exhibit A."

26. Probation explained to Ms. Santiago that the conditions of release were that the boys maintain zero curfew. The probation officer's specified that that meant that they had to attend school daily, and after school they had to remain in the home located at 56 Foster Street, Springfield Massachusetts. The probation officers stated to Ms. Santiago that if George or Hector went anywhere it had to be supervised by her. Last, the probation officers informed Ms. Santiago that there was not going be a dangerousness hearing because all parties were in agreement that the boys did not present a danger to the community.

27. At approximately 12:30 in the afternoon on December 17, 2004, Ms. Santiago brought the conditions of release, plus the lawyers cards to Commerce High School to give them to Dr. Stennett. The lawyers for George and Hector, Stephanie Raymond Esq. and Thomas Bridges Esq., respectively, had provided their cards to Ms. Santiago so that if Dr. Stennett had any questions she could call them.

28. Upon entering the main office at Commerce High School, Ms. Santiago was told by Maria, that Dr. Stennett did not have time to see her. Ms. Santiago observed Maria make

6

photo copies of all the documents, including the lawyer's cards, and she watched her put the copies in Dr. Stennett's mail box in the main office. The secretary also wrote down a message from Ms. Santiago asking her to contact her later that day regarding this matter. Ms. Santiago left two phone numbers for her to reach her at.

29. At approximately 5:30 that evening, Friday December 17th 2004, Dr. Stennett left a message on the message machine at Ms. Santiago's home saying that they have an appointment at Commerce High School, Monday morning at 9 A.M. on December 20th 2004.

30. On December 20th 2004 Ms. Santiago along with George and Hector went to the meeting at Commerce High School. Present for the school was Dr. Ann Stennett, the Principal of Commerce High School, Mr. Thomas O'Brien, Assistant Principal for the class of 2006, and Mr. Kolajo Afolabi, Assistant Principal for the class of 2008.

31. Dr Stennett started the meeting by asking George and Hector if they were involved in pulling fire alarms in the school a couple of weeks prior to their removal from school. Hector immediately said "hell no." George also stated "no." Dr. Stennett and Mr. O'Brien both asked if either George or Hector were special education students. The boys each stated they were not.

32. Mr. O'Brien then began to address the issues pertaining to the suspension. He also instructed Mr. Afolabi to take notes regarding the meeting. Mr. O'Brien had documents in his hand that he was referring to while he spoke. He stated that he had papers that were the school regulations. Mr. O'Brien informed Ms. Santiago, that if George and Hector were found guilty of a felony that they, pursuant to M.G.L. Chapter 71 §37H ½, would not be allowed back to Commerce High School. He then stated that if they are guilty of

misdemeanor they can come back to Commerce High School. He stated that in the meantime they would give them their school work from their classes to complete at home. He then stated that neither George nor Hector was allowed on the premises of any Springfield Public School property. He stated that if they were found on school property they would be arrested and charged with trespassing. Next he said that Mr. Afolabi and the other principals and the Quebec team would be notified of their decision and that they would be on the lookout for them on the school premises.

33. Then Mr. Afolabi said that if he sees the kids he will contact Dr. Stennett and take appropriate action against them.

34. Dr Stennett then spoke up at that point and asked again if they would write a written statement about the charges against them. Again both boys refused specifically informing Dr. Stennett that their lawyers had advised them not to write down anything relating to the charges against them. Dr. Stennett and Mr. O'Brien then both tried to convince them to write out statements. Mr. O'Brien said that even if they don't want to write a statement "that's okay because we know everything about it from a kid that was talking about it in the hallway."

35. Neither Ms. Santiago, nor George or Hector, were ever provided with the name of this "kid from the hallway" or what that boy from the hallway had said. Mr. O'Brien continued to talk periodically referring to the documents in his hand, saying that the papers he had told them everything.

36. Mr. O'Brien then stated that he had names. He then specifically mentioning the following names of other students like: Carlos Escalera, Ruben Parez, Andres Gonzales,

8

Charlie Garcia and Jose Mezonnette. After he finished stating the names he said to the boys "are you sure you don't want to make a statement?" Again, they responded "no."

37. Dr Stennett concluded the meeting stating that the School District was aware that the boys had an upcoming court date on January 7th, 2005 whereby the matter could be brought to a disposition. She said that depending on that disposition maybe they would let the boys back into school. She stated that she would wait for Dr. Burke to call and tell them what to do at that point. Dr. Stennett then abruptly said that they had a meeting with other parents so they had to conclude the meeting.

38. Ms. Santiago, George Oliveras, or Hector Rivera got up and walked out without ever having been provided with any documents or being able to see the papers Mr. O'Brien had in his hand.

39. Since that date, Ms. Santiago, George Oliveras, or Hector Rivera have never received any papers from the School District explaining the Principal's finding for a suspension or the length of the suspension.

40. On December 22nd 2004, Ms. Santiago was at the High School of Commerce to get forms verified by the school for "Workfare Program" that both boys participated in. While in the main office Ms. Santiago inquired about the boy's homework that was promised. Ms. Santiago waited a long time while the secretaries in the main office to called their teachers. After a while one secretary handed Ms. Santiago one assignment for George from his Italian class and one assignment for Hector from his Physical Education class. The secretary stated to Ms. Santiago that after Christmas Vacation they would send home all the homework and any missing assignments with her other son who also attends the High School of Commerce.

9

41. Between January 3rd, 2005 and February 7th 2005, Ms. Santiago made approximately six or seven phone calls to Dr. Stennett's Office to see what the status of the homework assignments were. Every time the secretaries put Ms. Santiago through to Dr. Stennett's voice mail.

42. Ms. Santiago's messages have never been retuned. As of February 7th 2005, no home work or missing assignments have been provided for either boy.

43. On January 7th 2005, Derek M. Beaulieu, Esq., was appointed by the Juvenile Court as Guardian Ad Litem for purposes of advocating for George Oliveras and Hector Rivera with regards to their being suspended from the Springfield Public Schools. Please find attached hereto as "Exhibit B" a copy of the appointment for George Oliveras.

44. On January 10th, 2005 Attorney Beaulieu wrote a letter of representation to Dr. Thomas Burke, Superintendent of the Springfield Public Schools requesting information both oral and written regarding the decision of the building principal, the nature and length of the suspension, and to be provided with any relevant documentation. Please find attached hereto as "Exhibit C" a copy of the Letter of Representation dated January 10, 2005.

45. The letter of January 10th 2005, also states the following:

> "I am also requesting a Superintendent's Level Appeal. At this appeal I will be submitting documentation that the felony charges pending against my client have been resolved without a finding guilt, or admission of delinquency. Upon submission of that documentation I expect that pursuant to Chapter 71 §37H ½ subsection (1) paragraph 2, the suspension will be overturned. If the submission of this documentation prior to the Superintendent's Level Appeal will help to expedite the process or potentially alter the position of the Springfield Public School, please let me know."

46. On or about Thursday, January 20, 2005, Attorney Beaulieu was contacted by telephone on behalf of the Springfield Public Schools by Attorney Peter Fenton.

47. Attorney Fenton indicted that he had been asked by the Springfield Public Schools to handle the matter pertaining to George Oliveras and Hector Rivera. It was his understanding that neither child was special education students and that this was a matter exclusively governed by M.G.L Chapter 71 §37H ½.

48. Attorney Beaulieu stated to Attorney Fenton that both matters had already been resolved without a finding of guilt. He was made aware that pursuant to section 37H ½ the school district had to prove not only that the student in question had been charged with a felony, but that he must be found guilty of the felony to be permanently excluded.

49. Attorney Beaulieu stated it was his belief that there were many procedural inadequacies in the School District's handling of the initial short term suspension, namely the lack of any written documentation about the nature of the allegations against them or the specific nature charges, names of any accusers, and lastly what their rights pursuant to the suspension/expulsion process had been violated.

50. Attorney Fenton indicated that the School District suspected the boys of pulling fire alarms in the past and that the administration at Commerce High School really did not want them in or at Commerce High School. He stated that they wanted to put them at MCDI, the Springfield Public School's alternative school.

51. On behalf of Hector Rivera and George Oliveras, Attorney Beaulieu stated that they wanted to be placed back at Commerce High School and that they had a right to be in the mainstream.

52. There was then a brief discussion with respect to whether any tutorial services had been provided. Attorney Fenton indicated that he would gather information regarding whether the tutorial had been in place and ascertain the position of his client with respect to whether they would reinstate the students. He concluded stating that he would respond the following day.

53. On Tuesday January 25, 2005, Attorney Fenton contacted Attorney Beaulieu by telephone and stated that his clients, the Springfield Public Schools wanted to place both George Oliveras and Hector Rivera at MCDI.

54. He stated that he had spoken with Assistant District Attorney, Brett Vottero at the District Attorney's Office and confirmed that the Plaintiff and his cousin had received dispositions pursuant to M.G.L. Ch. 276 §87 and as such they were not found guilty of felony charges. Assistant District Attorney, Vottero also informed him that the arson charges had been *nolle pros*.

55. Attorney Beaulieu responded to Attorney Fenton that pursuant to the law M.G.L. Ch. 71 §37H ½ that because neither boy had been found guilty of a felony, nor were they found dangerous or disruptive to the school or community, that they had to be reinstated immediately.

56. Attorney Beaulieu stated that if the Springfield Public Schools wanted to perform behavioral and or psych-educational testing once they were reinstated, because it believed the boys belonged in an alternative placement, then it was entitled to do that, but that was an entirely different process and an entirely separate matter. With respect to the instant matter they had to be reinstated.

57. In this phone conversation, Attorney Beaulieu specifically requested again to Attorney Peter Fenton that if the School District did not reinstate them at once, they wanted their Superintendent's Level Appeal as initially requested on January 10th 2005.

58. On January 26, 28, 31, and February 2, 2005, Attorney Beaulieu left messages with Attorney Fenton's Office to please return his phone calls.

59. As of February 7th 2005 neither the School District nor its attorney has responded.

60. Since December 16th 2004, George Oliveras has not been permitted to attend any school, he has not been provided with missing assignments as promised, and he has not been provided with any form of a tutorial.

## COUNT I

### CONDUCT BY DEFENDANTS AS ARBITRARY AND CAPRICIOUS

61. The Plaintiffs hereby realleges and incorporate by reference each and every preceding paragraph with the same force and effect as if set forth herein.

62. The decision of the Defendants to expel the Plaintiff, carrying out its policy is contrary to law and is arbitrary and capricious in its application.

63. As a direct and proximate result of the conduct of the Defendants, George was denied the opportunity to continue to attend school and complete his High School requirements and have suffered severe harm, injury and damages.

## COUNT II

### SUBSTANTIVE DUE PROCESS

64. The Plaintiffs hereby realleges and incorporate by reference each and every preceding paragraph with the same force and effect as if set forth herein.

65. The actions of the Defendants in expelling George were arbitrary and capricious and lacked any substantial basis.

66. Pursuant to the Fourteenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights, Articles I and X, George is protected against governmental action that is arbitrary and capricious and in violation of the guarantee of substantive due process.

67. As a direct and proximate result of the Defendants' actions, George was deprived of the opportunity to complete his courses of study at the High School of Commerce, and has suffered severe harm, injury and damages.

## COUNT III

## EQUAL PROTECTION

68. The Plaintiffs hereby realleges and incorporate by reference each and every preceding paragraph with the same force and effect as if set forth herein.

69. Pursuant to the Massachusetts Constitution and Laws, George has a right to a free public education, which is a fundamental right under the State Constitution.

70. Defendants have adopted and implemented a disciplinary policy that infringes on George's fundamental right to an education without the necessary justification for such infringement and without any compelling state interest.

71. Defendants, by adopting and implementing a disciplinary policy which is not rationally related to the goals they seek to achieve and to public policy, have interfered with George's fundamental right to an education, in violation of the guarantee of equal protection under State and Federal Constitutions.

72. Defendants, acting under color of state law, have deprived George of his rights under the equal protection clause of the United States Constitution and 42 U.S.C. § 1983.

73. Defendants knowingly and intentionally violated George's constitutional rights by implementing a policy that they knew was arbitrary, capricious and irrational.

74. As a direct and proximate result of the Defendants' actions, George has suffered severe harm, injury and damage in violation of their civil rights.

## COUNT IV

## PROCEDURAL DUE PROCESS

75. The Plaintiff hereby realleges and incorporates by reference each and every preceding paragraph with the same force and effect as if set forth herein.

76. The Defendants exclusion of George from school for alleged misconduct was undertaken without adequate notices and fair hearings in violation of Due Process Clause of the United States Constitution and 42 U.S.C. § 1983 and the Massachusetts Constitution is a systemic violation of the rights of George Oliveras and the rights of all students similarly situated at Commerce High School and within the Springfield School District and is the custom and policy of the Defendants in disciplinary actions against all students by those with decision making authority to suspend or expel students pursuant to M.G.L. 37H ½ .

77. Defendants knowingly and intentionally, even after having been afforded a litany of procedural violations, violated George's constitutional rights by suspending and expelling them and depriving them of liberty and property interests without due process of law.

78. As a direct and proximate result of the violations of due process by the Defendants, George has suffered harm, injury and damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, George Oliveras request a trial by jury and prays that the Court enter Judgment as follows:

A.  Enter Judgment for the Plaintiff, George Oliveras on each Count of Complaint in an amount sufficient to compensate them for all of their past, present and future injuries, together with interest and the costs of this action;

B.  Award the Plaintiffs, George Oliveras punitive damages for harm and injuries suffered by them as a result of the violations of their civil rights, said damages to be awarded pursuant to 42 U.S.C. § 1983;

C.  Enter Declaratory Judgment for the Plaintiffs, George on each Count of the Complaint, declaring that their exclusion from school was and is contrary to law, arbitrary and capricious, and in violation of their due process rights;

D.  Enter Permanent Injunctions requiring that the Defendants to provide all missing assignments, grade said assignments fairly, facilitate George's advancement to the tenth grade, expunge his record of this suspension/expulsion and cease and desist from disseminating any information to third parties concerning the Defendants' actions or the alleged misconduct of the Plaintiffs;

E.  Award the Plaintiff, George reasonable attorney's fees and costs pursuant to 42 U.S.C. §1983; and

F.  Grant such further relief as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted,<br>The Plaintiff<br>By his attorney |
| April 1, 2005 | _____<br>Derek M. Beaulieu, Esq.<br>1242 Main Street, Suite 306<br>Springfield, MA 01103<br>BBO#644185 |

17